430 So.2d 118 (1983)
Marie PALMER, Plaintiff-Appellee-Appellant,
v.
BARTLEY, INC., et al., Defendants-Appellants-Appellees.
No. 82-644.
Court of Appeal of Louisiana, Third Circuit.
March 9, 1983.
Rehearing Denied May 13, 1983.
*119 Brame, Bergstedt & Brame, Joe A. Brame, and Raggio, Cappel, Chozen & Berniard, Stephen A. Berniard, Jr., Lake Charles, for defendants-appellants-appellees.
Miller, Miller, Miller & Craton, Michael B. Miller, Crowley, for plaintiff-appellee-appellant.
Before FORET, CUTRER and KNOLL, JJ.
FORET, Judge.
Marie Palmer (plaintiff) brought this tort action to recover damages for personal injuries she suffered in a fall. Named defendants are: Jefferson Davis Bank & Trust Company (the Bank), the owner of the premises where plaintiff allegedly fell, and its general liability insurer, Zurich Insurance Company (Zurich); and, Bartley, Inc. (Bartley), a general contractor performing certain construction work on the Bank's premises at the time of the accident, and its general liability insurer, Liberty Mutual Insurance Company (Liberty).
The trial court, after trial on the merits, rendered judgment in favor of plaintiff and against Bartley and Liberty, in solido, in the amount of $24,189.80. The trial court further rendered judgment in favor of the Bank and Zurich, dismissing plaintiff's claim against them.
Bartley and Liberty appeal from that judgment and raise the following issues:
(1) Whether the trial court committed manifest error in making certain findings of fact upon which it based its decision that Bartley had been negligent, and that said negligence was a cause-in-fact of the plaintiff's injury;
(2) Whether the trial court committed manifest error in failing to find that plaintiff was guilty of contributory negligence, and,
(3) Whether the trial court abused its "much discretion" in assessing the amount of damages it awarded plaintiff.
Plaintiff also appeals from the trial court's judgment and raises the issue of whether the trial court committed manifest error in failing to find that Zurich provided medical payments coverage to her.

FACTS
This action arises out of an accident that occurred on July 7, 1980, in Jennings. On that date, plaintiff drove to the Bank to apply for a loan. She was employed as a babysitter at the time by Mrs. Betty Reed, a teller at the Bank. Plaintiff was accompanied by Mrs. Reed's child, Adrian, who was approximately 4½ years old. After arriving in Jennings, plaintiff parked her automobile on Cary Avenue, approximately one block west of the Bank. She and the child then began walking to the Bank.
At this time, Bartley had been engaged by the Bank to perform certain construction *120 work, and it was nearing completion of a driveway for drive through teller service. Plaintiff approached the construction site and stooped down to pass beneath a ribbon marking off the construction area. She then continued on to the entrance located on the west side of the Bank. However, before reaching this entrance, plaintiff allegedly fell and injured herself. Plaintiff is an elderly woman and suffered severe fractures of her right arm and elbow, as well as a fracture of a bone in her right foot. Plaintiff alleges that her fall was caused by the negligent placement of a plumbing clean-out cover.

ALLEGED NEGLIGENCE OF BARTLEY
The trial court's written reasons for judgment clearly indicate that it held Bartley liable to plaintiff on the basis of negligence. However, Bartley and Liberty, in their brief filed in this Court, argue that the trial court's finding of liability on their part is based on the legal principles applicable to strict liability. This is simply incorrect, and plaintiff, in her brief filed in this Court, notes that her action is based on negligence, rather than strict liability. Thus, we will review this matter, and the arguments of Bartley and Liberty, in light of the legal principles applicable to an action based on negligence.
In making a determination of whether Bartley is liable to plaintiff on the basis of negligence, we must first inquire as to whether any causal relationship exists between the harm suffered by plaintiff and Bartley's alleged negligent conduct. If plaintiff can show that she probably would not have suffered the injuries complained of but for Bartley's conduct, she has carried her burden of proof relative to cause-infact[1].
The trial court found that plaintiff had tripped on a plumbing clean-out cover located on the driveway under construction by Bartley for the Bank. The only witnesses to the accident were the plaintiff and Adrian. It was only at the trial of this matter that plaintiff testified that she had tripped on the clean-out cover.
Patrick R. Myers, a Vice-President and Cashier of the Bank, testified that plaintiff had told him she had fallen. However, when he asked her where she had fallen, plaintiff told him she couldn't remember. Because of this, he stated that he was no longer concerned about the accident, and he and plaintiff proceeded to fill out the loan application. He then advised her to see a doctor as she was complaining of pain.
Mrs. Reed testified that she spoke with plaintiff shortly after the accident occurred. Plaintiff told her she had fallen in back of the Bank and had hurt her arm. She stated that plaintiff, "... just said she fell ...", and that plaintiff did not tell her what had caused her to fall. Adrian, who was five years old at the time of trial, also testified. He identified some pictures taken of himself, indicating where plaintiff fell. The pictures show him pointing to a spot near a metal grating situated on the premises of the Jennings Federal Savings & Loan Association, which is located between the place where plaintiff parked and the Bank.
Plaintiff, in a deposition taken approximately thirteen months after the accident, was asked if she knew what had caused her to fall. She replied:
"Well, when I fell I just fell. I don't know. When I got up, I noticed a manhole was there with a concrete sticking out."
Further on in the deposition, when asked where she fell in relation to the clean-out cover, plaintiff replied:
"I guess I caught it with my foot, I guess. It is hard to say, you know, when you fell, you fell [sic]. I don't know."
At the trial of this matter, plaintiff was asked by the Court to explain how she fell, to which she replied:
"Well, when I step on the manhole, when I knew something, I was down."
*121 Irving Lapoint, Bartley's superintendent in charge of the construction project for the Bank, testified that he had between three and five men working in the area where plaintiff allegedly fell on the day of the accident. They were ripping up forms that had been used in connection with the pouring of concrete in the area. He stated that he did not see plaintiff fall, and that he asked his men if they had seen the accident. They all replied that they had not seen plaintiff fall.
The trial court found that the clean-out cover had caused plaintiff to fall. While we have serious doubts regarding this finding, we are unable to say that it is clearly wrong.
A finding that Bartley's conduct was a cause-in-fact of plaintiff's injuries, however, does not establish liability. In addition, we are required to ascertain whether Bartley breached a legal duty imposed to protect against the particular risk involved. In making this determination, the following inquiries must be made:
(1) What, if any, duty was owed by Bartley to plaintiff?
(2) Was there a breach of this duty?
(3) Was the risk and harm caused within the scope of protection afforded by the duty breached?[2]

I. DUTY OWED.
The first inquiry is what, if any, duty was owed by Bartley to plaintiff.
Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. In all cases, duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances. Seals v. Morris, 410 So.2d 715 (La.1981), on rehearing, 410 So.2d 717 (La.1982).
Hill v. Lundin & Associates, Inc., supra, stated on pages 622 and 623 that:
"Where the rule of law upon which a plaintiff relies for imposing a duty is based upon a statute, the court attempts to interpret legislative intent as to the risk contemplated by the legal duty, which is often a resort to the court's own judgment of the scope of protection intended by the Legislature. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298; Pierre v. Allstate Ins. Co. [257 La. 471, 242 So.2d 821] supra. Where the rule of law is jurisprudential and the court is without the aid of legislative intent, the process of determining the risk encompassed within the rule of law is nevertheless similar. Malone, Ruminations on Dixie Drive It Yourself, 30 La.L.Rev. 363 (1970); McDonald, Proximate Cause in Louisiana, 16 La.L.Rev. 391 (1956). The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination."
It is our opinion that Bartley, as a contractor engaged in the construction of an addition to the Bank, owed a duty to patrons of the Bank to warn them of any hazardous or unreasonably dangerous conditions created by said construction work. Plaintiff was a patron of the Bank and Bartley owed this duty to her.

II. BREACH OF DUTY.
The next inquiry is whether Bartley breached the duty it owed plaintiff. Irving Lapoint testified that the area under construction (the area where plaintiff allegedly fell) was marked off by three ribbons attached to 2 × 4's that had been driven into the ground at intervals of eight feet or so. The top ribbon had flagging hanging from it, while the bottom two were simply plastic ribbons. He stated that it was the task of one of his men to inspect the ribbons every morning, and to replace them if they were broken. Lapoint testified that, even though the ribbons were in place, people would still attempt to cross through the construction area at times. He stated that when this happened, he would stop them *122 before they could cross. He also instructed his men to stop anyone from crossing through this area. Lapoint testified that the ribbons were in place on the date of the accident.
Plaintiff admitted that she saw one ribbon around the construction site, and that she bent down and passed beneath it. Plaintiff was asked:
"It was clear to you that this was an area that was under construction?"
Plaintiff replied:
"Yes, yes sir."
Patrick Gallaugher was accepted by the trial court as an expert in architecture. He was the architect who designed the addition to the Bank. Gallaugher stated that the plumbing clean-out cover was approximately one-quarter of an inch above the surrounding concrete on its northeast quadrant. He testified that in many cases it is actually impossible to get a completely perfect piece of work, when one is using two different materials (such as concrete and steel) to construct something. He then noted that this cover was located in a drive through area, rather than on a walkway. He opined that it was reasonable to have a difference of one-quarter of an inch between a cover and the surrounding concrete in such an area. He testified that the cover was located somewhere between three and five feet from the nearest sidewalk. He also testified that the area where the cover was located was roped off during construction, but was unable to remember if it had been roped off on the day of the accident.
Our review of the record convinces us that Bartley breached no duty owed by it to plaintiff. It made a reasonable effort to keep people out of the construction area, and plaintiff admitted that it was obvious to her that construction was underway in the area where she allegedly fell. Having found no breach of duty by Bartley, there is no need for us to discuss whether the scope of protection afforded by that duty encompassed the risk of harm encountered by plaintiff. It is our opinion that the trial court committed manifest error in finding Bartley negligent and liable to plaintiff.
Assuming, arguendo, that we would agree with the trial court's finding of negligence on the part of Bartley, we would still deny recovery to plaintiff on the basis that plaintiff was guilty of contributory negligence.
In order to bar a plaintiff's recovery because of his contributory negligence, a court must find that plaintiff was negligent and that the negligence was a legal cause of his injury. The threshold inquiry in the determination of legal cause is whether the act was a substantial factor in causing the injury. Breithaupt v. Sellers, 390 So.2d 870 (La.1980).
The evidence shows that plaintiff was negligent and that her negligence was a legal cause of her injury. Plaintiff admitted entering into an area she knew was under construction, and which was obviously designed for automobile use, rather than pedestrians. Irving Lapoint testified that a sidewalk had been clearly marked off for pedestrians to use in gaining entrance to the Bank on its west side. Had plaintiff heeded the visible warning signs of danger (which she admittedly saw) and used the sidewalk to reach the entrance to the Bank, she would not have fallen in the construction area. Thus, we find that plaintiff's negligent conduct was a substantial factor in causing her injury. Based on these findings, it is our opinion that plaintiff was contributorily negligent. Because of our decision herein, the other issues raised by Bartley are moot.

ZURICH'S ALLEGED MEDICAL PAYMENTS COVERAGE
Plaintiff contends that the trial court committed manifest error in failing to find that Zurich, in its insurance policy issued to the Bank, provided medical payments coverage to her. We have reviewed the pertinent provisions of the Zurich policy and find no merit to plaintiff's contention. The exclusions found in the medical payments provisions of that policy clearly exclude coverage in situations such as this, i.e., for bodily injury arising out of operations *123 performed for the named insured by independent contractors, which involved changing the size of or moving buildings or other structures. The evidence indicates that the work performed by Bartley doubled the size of the Bank.

DECREE
For the above and foregoing reasons, the trial court's judgment rendered in favor of plaintiff, and against Bartley and Liberty, is reversed. Judgment is hereby rendered in favor of Bartley and Liberty, dismissing plaintiff's action against them. The trial court's judgment is affirmed in all other respects.
All costs of this appeal, and in the trial court, are assessed against plaintiff-appellant.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
NOTES
[1] See Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (La.1972); Head v. St. Paul Fire & Marine Ins. Co., 408 So.2d 1174 (La.App. 3 Cir.1982), writ denied, 412 So.2d 99 (La.1982); Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3 Cir.1981), writ denied, 410 So.2d 760 (La.1981).
[2] See authorities cited in Footnote 1.