GUIDRY, Judge.
In this personal injury action, Donald J. Soileau and his wife, Carrie T. Soileau, brought suit against Glenn W. Jaubert, United Services Automobile Association (USAA), Jaubert’s insurer, and Allstate Insurance Company (Allstate), the Soileaus’ uninsured motorist carrier, seeking damages for injuries allegedly sustained by Donald Soileau when the car he was driving was rear-ended by an automobile driven by Jaubert. All defendants answered the suit denying liability to plaintiffs, or alternatively, urging Donald Soileau’s contributory negligence. Plaintiffs subsequently amended their petition to set forth a claim for loss of consortium on behalf of Carrie Soileau. Prior to trial, Carrie Soileau’s claim for loss of consortium was rejected by the trial court as having prescribed.
The matter was tried to a jury. The jury found that the accident was caused by the sole negligence of Glenn Jaubert and awarded Donald Soileau $100,000.00 in damages. Following rendition of the jury verdict, the trial judge signed a judgment in favor of Donald J. Soileau and against defendants, USAA and Allstate, in solido, in the sum of $100,000.00, together with legal interest and costs. In response to a motion filed by Allstate, the judgment was amended on December 20, 1985, casting only USAA and Glenn Jaubert in solido for damages of $100,000.00 in favor of plaintiff.[1]
*531 Following a series of unsuccessful motions for new trial, additur and remittitur by the various parties to the suit, defendants, USAA and Jaubert, suspensively appealed the trial court’s judgment. On appeal, appellants assert error in the trial court’s finding that the fault of Jaubert was a proximate cause of plaintiffs cervical condition which required surgery in April of 1984. Alternatively, appellants contend that the award of $100,000.00 is excessive. Donald Soileau answered the appeal, seeking an increase in the jury’s award.
FACTS
On December 1, 1983, at approximately 3:30 p.m., Donald Soileau was driving his wife’s 1970 Ford pickup truck south on University Avenue in Lafayette. Although it was not raining at the time, the streets were wet from a previous rain. Soileau approached the intersection of University Avenue and Cameron Street and came to a stop behind another automobile which was stopped at the intersection waiting to make a left turn. Immediately thereafter, Glenn Jaubert, driving a 1973 Toyota Corolla, ran into the rear of Soileau’s vehicle.
Officer Warren McGovern of the Lafayette City Police Department arrived at the scene of the accident shortly thereafter. Officer McGovern noted that there was heavy damage to Jaubert’s vehicle and only moderate damage to the bumper of Soi-leau’s truck. It was also noted in McGovern’s accident report that Soileau complained to him of minor injury to his back. Soileau stated at trial that the impact caused his head to lunge forward and then backward, resulting in his head striking the rear window of the truck.
When the accident investigation was completed, Soileau drove to Lafayette General Hospital to visit his wife who had undergone surgery that morning. When Soileau related the details of the accident to his wife, she convinced him to seek treatment at the emergency room of Lafayette General. Soileau was examined by Dr. Cary Hernandez. Soileau complained to Dr. Hernandez of upper back pain and mild neck discomfort. X-rays taken of his cervical spine revealed no evidence of fracture or subluxation, but did show a narrowing of the interspace at L5-6. He was given a prescription for parafon forte to be taken as needed for pain.
Soileau attended his wife in the hospital for approximately a week following the accident, sleeping on a sofa bed in her room. He testified that his neck pain subsided after about a week.
Sometime in early January, 1984, Soileau began to notice a tingling sensation in his left arm and numbness in three of the fingers of his left hand. He stated that these sensations would occur about three or four times a week, usually when he was sitting still or otherwise inactive.
On March 29, 1984, Donald awakened with an annoying pain in his back, in the area of his left shoulder blade. He went to work that morning but left when the pain became intense and went to see a chiropractor, Dr. Herman R. Perry. Dr. Perry used electrical muscle stimulation on the lower part of Donald’s neck, but to no avail. Dr. Perry found that there was a problem in the upper part of the thoracic vertebra, which was causing muscle spasm, tenderness and pain. He recommended that Soileau see a medical doctor. The Soileaus’ family physician, Dr. Patrick A. Sonnier, was out of his office that day. The following day, Soileau went to see Dr. Sonnier, complaining of neck pain and left arm pain. X-rays were taken which revealed some evidence of a narrow disc space and also some bony encroachment. Dr. Sonnier gave Soileau an injection for pain and advised him to see a neurosurgeon.
Soileau consulted Dr. Steven R. Gold-ware. After performing several tests, Dr. Goldware, a neurological surgeon, concluded that the severe pain in Soileau’s neck which radiated into his left arm was caused *532 by a pinched nerve.' Dr. Goldware opined that Soileau would probably require surgery. This suggestion was rejected by Soi-leau. Dr. Goldware thereafter recommended that he be placed on a home traction program. Soileau remained hospitalized at Lafayette General until April 3, 1984. While hospitalized, he underwent physical therapy. The therapist noted that Soileau’s pain was located between the left shoulder blade and the middle of his back and that his neck motion was restricted to some degree.
Being dissatisfied with his progress, upon his discharge from Lafayette General, Soileau consulted Dr. Bruce Razza at St. Charles General Hospital for a second opinion. Soileau was admitted to St. Charles on April 3, 1984. Dr. Razza, an orthopedic surgeon, examined Soileau and found limited range of neck motion, tenderness over the posterior spinous processes of the C4-7 region and neck spasms. Dr. Razza noted that the pain in Soileau’s neck, which radiated down his left arm, was consistent with an irritated or pinched nerve in the area of the neck. Dr. Razza’s preliminary diagnosis was cervical disc disease or disc herniation.
While at St. Charles, Soileau underwent a series of tests, including x-rays, a Cat Scan and an EKG. He also received physical therapy, which relieved the pain to some extent. The results of the Cat Scan indicated marked acquired central and lateral stenosis, primarily at the 5-6 level, with the presence of large osteophytes. The tests also revealed marked contraction of the spinal canal and abnormal motion of the disc functioning at the 5-6 and 6-7 levels. As a result of these findings, Dr. Razza concluded that Soileau had cervical spondylosis at the C4-5, C5-6, and C6-7 levels, and recommended surgery.
On April 12, 1984, Soileau underwent an anterior cervical discectomy and fusion, during which three cervical discs were removed. The discs were examined at the pathology lab and found to contain evidence of degenerate disc disease.
Soileau was discharged from St. Charles on April 16, 1984, with instructions that he was to wear a hard neck collar during the day and a soft collar at night to sleep. Soileau returned to work approximately two months following his surgery.
CAUSATION
Appellants contend that the trial court erred in finding that Jaubert’s negligence was a legal cause of Donald Soileau’s cervical condition which necessitated surgery on April 12, 1984.[2] In support of this argument, appellants urge that Soileau’s cervical condition was the result of a severe pre-existing arthritic condition which was exacerbated in March of 1984 while Soileau was performing gardening work.
In Prudhomme v. Nationwide Mutual Insurance Co., 465 So.2d 141 (La.App. 3d Cir.1985), writ denied, 467 So.2d 1132 (La. 1985), this court set forth the following regarding determination of legal cause:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for its findings, a reviewing court should not disturb this factual finding in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The cause-in-fact of an injury is a factual question and the trial court’s determination will not be disturbed unless it is manifestly erroneous. Gilliam v. Williams, 451 So.2d 681 (La.App. 2nd Cir.1984). The threshold inquiry in the determination of legal cause is whether the act was a substantial factor in causing the injury. Palmer v. Bartley, Inc., 430 So.2d 118 (La.App. 3rd Cir.1983). To be a cause-in-fact, the negligent conduct must be substantial and a necessary antecedent to the harm produced. Breithaupt v. Sellers, 390 So.2d 870 (La.1980); Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, *533 137 So.2d 298 (1962). In Ganey v. Beatty, 391 So.2d 545 (La.App. 3rd Cir.1980), writ denied, 396 So.2d 1325 (La.1981), we stated:
‘. an act will be deemed a cause-in-fact of an accident only when, viewed in the light of all the evidence, it is concluded that it is a substantial factor without which the accident would not have happened.’ (Emphasis added.)”
We must therefore determine if the jury was clearly Wrong in finding that a direct causal connection existed between the December 1, 1983 automobile accident and the March 29, 1984 acute onset of cervical pain which subsequently led to Soi-leau’s cervical disc fusion in April, 1984. Our careful review of the record convinces us that the jury’s determination in this regard was not manifestly erroneous.
The record makes clear that Soileau sustained an injury to his neck and upper back in the December 1, 1983 automobile accident. However, after approximately a week of rest, the pain subsided. Approximately one month later, he began experiencing tingling sensations and numbness in his left arm, which symptoms continued until the severe onset of cervical pain on March 29, 1984.
Defendants urge that in light of Donald’s history of neck and arm pain, he suffered from a pre-existing arthritic condition which was in no way related to the December 1983 accident. Although there is evidence in the record of past cervical and arm complaints by Soileau, none were of such a severe and progressive nature as that which developed after the December 1983 automobile accident.
The chiropractor, Dr. Perry, testified that he had treated Soileau on several occasions since February 1977. Dr. Perry’s past treatments included treatment for such complaints as headaches, low back pain, leg pain, pain in the area of the lower shoulder blade, and pain in his right hand. It was not until March 29,1984 that Soileau sought treatment for neck pain.
Dr. Sonnier, the Soileaus’ family physician, testified that prior to December 1, 1983, Soileau never complained to him of any problems with his neck. Soileau was, however, examined by Dr. Sonnier in April of 1982 for complaints of numbness and tingling in his left arm. The April 1982 examination produced negative results and Dr. Sonnier did not render any treatment to Donald for the problem. Dr. Sonnier opined that, in retrospect, based upon the x-rays taken in March of 1984, the arm pain which Soileau experienced in 1982 was “most likely” caused by a cervical disc problem. However, no x-rays were taken at that time.
In 1976, Donald was involved in an automobile accident in Opelousas. Dr. Sonnier noted that Soileau complained at this time of head, neck and left arm injuries.[3] Soi-leau denied that he injured his neck in the accident, although admitted that he wore a soft collar for about a week following the accident. He was released from doctor’s care a month later, with no further complaints of pain.
In October 1979, Soileau was seen by Dr. Sonnier for complaints of lower back pain. Dr. Sonnier referred him to an orthopedic surgeon, who eventually performed a lami-nectomy. This surgery was apparently successful, as Soileau returned to work two months following the surgery with no further complaints.
Dr. Sonnier opined that a patient with arthritis or cervical spondylolysis is usually more susceptible to injury. When asked to explain how it was possible for a person to receive a trauma to his neck with attendant pain for several days, then followed by only numbness in his fingers with a later severe onset of pain after a period of several months, Dr. Sonnier stated:
“Well, in general, it is not unusual to see a patient following an injury that really has no complaints. And then, a short time interval later, he begins to develop *534 symptoms which you suspect are related to the injury. In some injuries to the neck, the disc can be damaged by trauma, but to a minor extent, such as a tear in a cloth or a tear in a towel, which, as you know, over a period of time, will just extend and get longer and longer. It’s possible that — and in general, I am speaking, you can have an injury that initially does not present the symptoms. As the tear in the disc of the neck gets longer, the disc begins to protrude, similar to a weak spot in an innertube, which I think we have all seen. As that protrusion extends, it pushes more and more on to a nerve. And as the pressure becomes more pronounced, the patient begins to develop symptoms.”
Dr. Sonnier also explained that a severe degenerative condition, such as degenerative arthritis, can cause nerve root impingement which would cause numbness which could be present for several days and then disappear, only to reappear at a later time.
Appellants argue that the severe cervical condition of March 1984 was simply a continuation of a pre-existing arthritic problem which had plagued plaintiff over the years and was exacerbated, not by the auto accident, but by an episode in early March 1984 when plaintiff was performing yard work. In support of this position, appellants note that the histories given to Dr. Goldware and the therapist mentioned only the prior digging episode and failed to relate that Soileau had been in an automobile accident in December of 1983.
At the outset, we note that at the time that plaintiff’s history was related to Gold-ware and the therapist, plaintiff was in excruciating pain and testified that he did not remember these initial visits with Gold-ware. Additionally, Mrs. Soileau testified that she was the one who gave Donald’s histories to Goldware and the therapist.
Soileau admitted at trial that he was involved in some minor yard work a couple of weeks prior to the acute onset of pain in March of 1984. He stated however that, although he did experience some soreness and stiffness in his arms and legs the following day, it was just “normal soreness” which one experiences when performing a task which they are not accustomed to performing. He stated that such soreness did not affect the numbness in the fingers of his left hand which he had been experiencing since January 1984.
Only two physicians testified concerning whether the 1983 automobile accident caused or contributed to plaintiff’s severe cervical condition of March 1984. Dr. Gold-ware testified that the spinal stenosis which Soileau suffered from was something that he was either born with or which he had had for many years. Dr. Goldware stated that the stenosis could also be caused by “a super major accident with major damage, dislocations, and fractures”, but that it could not be caused by a relatively minor accident. He opined that the symptoms of numbness and tingling can develop suddenly one day for no known reason. Dr. Goldware concluded that he did not believe that the 1983 accident caused Soileau’s cervical problem for which he was later operated on, but rather that his severe arthritic condition caused the pinched nerve.
Dr. Razza agreed with Dr. Goldware that Soileau’s stenosis appeared to be the type which occurs over a period of time, as a degenerative condition, thus making him more susceptible to problems. However, Dr. Razza opined that it was more probable than not that Soileau would not have required surgery except for the Dece~ her 1983 accident. Although Dr. Razza admitted that this opinion was based principally on the history given to him, he explained that he nonetheless “... had enough significant information and physical findings and diagnostic studies independent of anything else to formulate an opinion as to the diagnosis and the treatment”. When asked whether the yard work which was performed in March 1984 could have caused Soileau’s severe cervical condition, Dr. Raz-za explained:
“... In other words, if he reports bad pain following a car accident, it flared up a little after digging, and — but went back to the way it was before, then I’d still feel it’s the car accident. Whereas, *535 if he reports some neck pain after the car accident, severe increased neck pain after digging which did not get better, then it would seem like the digging had a significant role in leading to his current picture.”
In the instant case, the evidence indicates that Soileau suffered only minimal pain following the digging episode which lasted only a couple of days. Weeks later, he was struck with a severe onset of pain in his neck and upper back area. Under these facts, Dr. Razza’s opinion that the automobile accident was the cause of plaintiffs cervical problems remains intact. As such, we cannot say that the jury erred in relying on his opinion as opposed to that of Dr. Goldware. We affirm the trial court’s finding of liability against defendant, USAA and Jaubert.
QUANTUM
Having found no error in the trial court’s determination of liability, we turn to a consideration of whether the $100,-000.00 lump sum awarded by the jury was proper under the particular circumstances of this case.
It is well settled that a plaintiff is entitled to compensatory damages for all damages suffered which were directly caused by an accident which was the fault of another. Thames v. Zerangue, 411 So.2d 17 (La.1982). A trial court has much discretion in awarding such damages. Thibodaux v. Acme Truck Lines, Inc., 443 So.2d 716 (La.App. 5th Cir.1983), writ denied, 445 So.2d 439 (La.1984); Copeland v. Louisiana Department of Transportation and Development, 428 So.2d 1251 (La.App. 3rd Cir.1983), writ denied, 435 So.2d 448 (La. 1983).
Dr. Razza testified that, although the cervical fusion would reduce the mobility in Soileau’s neck to some extent, he had gained a tremendous amount of relief and improvement from the surgical procedure. As a result of the fusion, Dr. Razza assigned Soileau a 20% permanent disability of his entire body. Dr. Razza opined that he would have some moderate restrictions and would not have full range of motion in his neck. He also stated that Soileau would still have “some intermittent aching in the neck region of an arthritic nature on a permanent basis.” Dr. Razza found that Soileau was extremely well-motivated to return to his work and allowed him to return early with the mandate that he only perform light or sedentary work without any prolonged standing or sitting.
Dr. Razza’s final examination of Soileau took place in June 1985. At that time, Dr. Razza felt that the surgery had gone exceedingly well and he was satisfied with the results. Although Soileau would possibly have future intermittent symptoms of an arthritic nature, Dr. Razza felt that he would be able to control such with heat, mild medications, and the intermittent use of a neck collar. Dr. Razza could foresee no need for any future surgery, nor for the need of any nerve blocks.
Soileau, 48 years old at the time of trial, testified that following his 1984 neck surgery, he was required to wear a hard collar for approximately five months. He returned to work at Evans Electrical Supply, where he had worked for the past twenty-four years, about two months following his surgery. Soileau was an outside salesman for Evans, which required him to travel around the Lafayette area, calling on customers. Upon first returning to work, Soi-leau was only able to work about half a day, but after approximately five months, he was working full time.
Although Soileau complained of a decrease in his productivity post accident and a resulting loss of income, the record does not support the conclusion that such loss is related to his neck injury.
Dan Womack, president of Evans, testified that Evans’ overall business had suffered since 1982 due to the general declining economic conditions in the area. Womack also explained that in 1982, Evans became involved with highly technical products and as a result only hired new salesmen who were college graduates with engineering degrees. Because Soileau had only a high school education and was not as knowledgeable in the more sophisticated electrical areas, Evans had to re-assign him *536 to some less technical accounts. Womack noted that Soileau’s decline in commissions started in April of 1984 and continued through August of 1985. Womack could not say that Soileau’s loss of income had anything to do with the automobile accident. He did note that Soileau never complained that his neck condition interfered with his work performance.
Soileau testified that he was unable to participate in various outside activities which he previously enjoyed, such as hunting, fishing and golf, for a year following his surgery. He stated that prior to the 1983 accident, he would play golf on an average of two to three times a week. Since his surgery, he plays only about three times a month and is “drained out” after each match. He also stated that since his surgery he no longer has patience with his family and co-workers. He gets tired by three o’clock in the afternoon and when he returns home from work, he simply wants to rest and be left alone.
Carrie Soileau testified that because of Donald’s drop in income over the past few years, she has had to secure a job on a temporary basis. Carrie stated that Donald is unable to do many household chores such as painting and heavy lifting.
Our careful review of the record reflects no clear abuse of discretion in the trial court’s award. Soileau’s neck symptoms did not become severe until March 29,1984. He underwent a successful cervical fusion on April 12, 1984. Soileau took pain medication for only a week following his surgery and returned to work two months thereafter. The record indicates that Soi-leau incurred approximately $12,000.00 in medical expenses. The property damage occasioned to the Soileaus’ truck was approximately $200.00. There was no evidence presented at trial that Soileau will require any future medical attention. The evidence does show that Soileau has a 20% permanent disability of his whole body and will probably continue to suffer from some intermittent arthritic pain in his neck. Soi-leau is also minimally restricted in his outside activities. However, he is able to continue his work as a salesman for Evans.
For the above and foregoing reasons, the amended judgment of the trial court dated December 20, 1985 is affirmed. Defendants, United Services Automobile Association and Glenn Jaubert, are cast with all costs of this appeal.
AFFIRMED.

. The original judgment omitted Jaubert as a party cast through error. Allstate successfully argued to the trial court that, as the uninsured motorist carrier of the plaintiffs, it could not be *531 held liable for the $100,000.00 judgment in favor of plaintiffs, as USAA provided liability coverage to defendant in that amount.

. On appeal, defendants do not contest the jury's finding that Jaubert’s negligence was the sole cause of the accident.

. Although Dr. Sonnier's notes indicate that Donald Soileau was involved in an auto accident in 1973, these notes apparently were referring to the 1976 auto accident, as he was not involved in an accident in 1973.