560 So.2d 125 (1990)
Anthony GUIDRY on Behalf of Deanne Marie MECHE, Plaintiff-Appellant,
v.
RAPIDES PARISH SCHOOL BOARD, et al., Defendant-Appellee.
No. 88-1300.
Court of Appeal of Louisiana, Third Circuit.
April 18, 1990.
Guglielmo & Lopez, H. Douglas Hunter, Opelousas, for plaintiff-appellant.
Gist, Methvin, Steven Cook, Alexandria, for School Bd.
Provosty, Sadler, Albin A. Provosty, Alexandria, for St. Mary's.
Before GUIDRY, DOUCET and KING, JJ.
DOUCET, Judge.
This is an appeal from a district court judgment dismissing the plaintiff's action for the damages sustained by his nineteen year old retarded ward when she was allegedly sexually molested at the J.B. Lafargue School in Rapides Parish.
*126 Nineteen year old Deanne Meche is a mentally retarded female who functions at the level of a five to six year old. Her legal guardian is Anthony Guidry, the plaintiff herein. Deanne was a student from 1973 until December 1983, at St. Mary's Residential Training School, which is operated by the Roman Catholic Diocese of Alexandria. As a part of her educational program at St. Mary's, Deanne participated in a co-educational training program for mentally handicapped students offered by the Rapides Parish School Board at the J.B. Lafargue School. While at Lafargue, students are under the supervision of Rapides Parish School Board employees.
On October 18, 1983, at about 10:30 a.m., the students took a regularly scheduled break. At the beginning of the break, the boys and girls were taken separately, in supervised groups, to the bathroom. They were allowed to buy soft drinks and snacks and then escorted to a common area for the remainder of the break. The teachers and aides who were on duty on October 18, 1983, testified that students were supposed to be under constant supervision and were not to be allowed to separate from the group during break.
On October 18, 1983, after all the students were assembled in the common area for their break, they were left entirely alone, at least briefly. The testimony of those present revealed that the school board employees in charge of supervising the break, left the common area and went to the office. The office had a glass wall to allow observation of the common area, but a complete view was blocked by a partition which extended part of the way down the side of the common area.
Leroy Coleman was supervising the boys. After assembling them in the common area, he left and went the short distance to the office. There he lit a cigarette. When he looked back at the common area he noticed that two of the boys, Darren Blue and George Shepherd, were missing. Mr. Coleman went back to the common area, through a partition and into the adjoining industrial arts shop. There he found George Shepherd guarding the door to the adjoining "coke room." Inside the "coke room" he found Darren Blue with his pants and underwear down. He was kneeling over Deanne Meche who was lying on the floor with her slacks and underwear down and her shirt pulled up. Mr. Coleman immediately called for help. He did not check for signs of sexual activity. Female supervisors came to look after Deanne. They questioned her about what had happened but did not examine her for evidence of intercourse. Julie Guillory, a registered nurse from the School Board, was called. She too questioned Deanne but did not examine her. Deanne was then returned to St. Mary's alone. There, she was sent to the infirmary where she was examined by Charlotte Cull, the duty nurse. Ms. Cull found no vaginal tears. She did not check for the presence of semen. Neither the School Board nor St. Mary's ever had her examined by a physician to determine whether intercourse occurred. Dr. Credeur, the staff doctor, was consulted only by phone. Deanne's guardian, Anthony Guidry, and his wife, Audrey Guidry, were not notified of the incident until November 11, 1983. At that time, Linda Theis, a social worker at St. Mary's, wrote to the Guidrys requesting a meeting with them when they came to get Deanne for the Thanksgiving holiday.
Upon receiving the letter, Audrey Guidry immediately called Ms. Theis, who would not give out detailed information on the telephone. A meeting was held on November 18, 1983 at St. Mary's. Deanne was removed from St. Mary's a few weeks later.
The Guidrys testified that when Deanne came home they noticed changes in her behavior. She became withdrawn, seemed to fear men, had nightmares and crying spells, and suffered a loss of appetite. As a result, the Guidrys sought counseling for Deanne. They were referred to Dr. William Janzen, a clinical psychologist. He treated Deanne from October 16, 1984, through December 16, 1985.
On October 16, 1984, Anthony Guidry, individually and as legal tutor of Deanne Meche, filed this suit against the *127 Rapides Parish School Board, St. Mary's Residential Training School, and the Roman Catholic Diocese of Alexandria. A trial was held on December 15, 1987 and April 6, 1988. The trial judge rendered judgment dismissing the plaintiff's claims. According to his written reasons for judgment, the trial judge found that the plaintiffs were not entitled to damages because they failed to prove that sexual intercourse occurred. We disagree.
While proof of intercourse might be necessary to support a criminal charge of rape, it is not necessary to support the plaintiffs' civil claim for damages under a negligence theory. "Every action whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315.
In order to find liability under a negligence theory, it must first be determined whether the defendant's conduct was a cause in fact of an injury to the plaintiff. If the plaintiffs show that they suffered an injury which would not have occurred absent the defendant's conduct, then they have carried the burden of proof with regard to cause-in-fact. Booty v. Kentwood Manor Nursing Home, 483 So.2d 634 (La. App. 1st Cir.1985), writ denied, 486 So.2d 754 (La.1986).
Dr. Janzen testified at trial as to what had been told to him by Deanne during their sessions. He stated that she told the same story consistently throughout her treatment. His testimony indicated that this sort of consistency in Deanne's story is a sign of veracity, since she lacks the mental capacity to retain a lie over time and repeat it accurately. Deanne told Dr. Janzen that "Blue Boy" (apparently Darren Blue) pushed her into the "coke room", pushed or pulled her to the floor and pulled her pants down. Through use of anatomically correct dolls she indicated that intercourse had in fact occurred. Dr. Janzen said that Deanne's emotional turmoil manifested itself during their session in the form of anger towards "Blue Boy" and towards the personnel at J.B. Lafargue and St. Mary's. Dr. Janzen further stated that Deanne told him about nightmares and her belief that God would not forgive her for what had happened. Dr. Janzen testified that Deanne was damaged as a result of the assault.
Dr. Credeur testified that Deanne's psychological problems could have occurred as a result of being pulled out of school suddenly. However, Dr. Credeur never saw or spoke to Deanne after the incident of October 18, 1983, therefore his testimony cannot be given the same weight as the testimony of Dr. Janzen, who treated Deanne for over a year.
The trial testimony shows that Deanne did, in fact, undergo a traumatic experience, whether actual rape or simply an assault, which resulted in psychological injuries requiring treatment, which would not have occurred had she and the other students been supervised. Therefore, plaintiffs did carry their burden of proving that the actions of the defendant, Rapides Parish School Board, were a cause-in-fact of an injury to the plaintiff, Deanne Meche. We do not find that the plaintiffs carried their burden of proving that the actions of the defendants, St. Mary's Residential Training School and the Roman Catholic Diocese of Alexandria, were a cause-in-fact of an injury to the plaintiff, Deanne Meche.
However, a finding of cause-in-fact does not alone establish liability. It must also be ascertained whether the defendant, Rapides Parish School Board, breached a legal duty imposed to protect against the particular risk involved.
As this court stated in Palmer v. Bartley, Inc., 430 So.2d 118 (La.App. 3rd Cir. 1983), in order to make that determination, the following questions must be asked:
"(1) What, if any, duty was owed ... to plaintiff?
(2) Was there a breach of this duty?
(3) Was the risk and harm caused within the scope of protection afforded by the duty breached?"
Schools offering training for mentally, emotionally, or socially handicapped young adults have a duty to use reasonable care to protect their students from harm. Hunter v. Evergreen Presbyterian Vocational *128 School, 338 So.2d 164 (La.App. 2nd Cir.1976). In this instance, testimony showed that the teachers at J.B. Lafargue understood that their students required constant supervision. They had been told that the retarded students were never to be left alone. The teachers' testimony revealed that the students were, in fact, left alone. Therefore, a breach of the duty of reasonable care, as required by these particular students, did occur.
Finally, we must determine whether the risk and harm were within the scope of the protection afforded by the duty. Clearly the protection afforded by the duty not to leave the students alone encompasses the risk of sexual behavior by students whose bodies have developed beyond their mental ability to understand or control their urges. Accordingly, we find that the plaintiff established the liability of the defendant, Rapides Parish School Board, for the injury to the plaintiffs.
DAMAGES
As a result of the incident of October 18, 1983, Deanne Meche required fourteen months of psychological counseling. Anthony Guidry incurred charges for Deanne's counseling of One Thousand Five Hundred Sixty-five ($1,565.00) Dollars. While Deanne apparently had no residual problems, during the two year period after the incident and before her release from treatment, Deanne suffered from severe mental distress. As a result an award of $15,000 in general damages and a special damage award of $1,565 in medical expenses is appropriate.

HOLD HARMLESS AGREEMENT
Also at issue at trial was a third party demand by St. Mary's and the Diocese of Alexandria against the Rapides Parish School Board for indemnity as allegedly agreed to by the School Board in their contract with St. Mary's. The only evidence submitted on this point was a "Contract and Agreement for Training of Public Students at the St. Mary's Residential Training School," executed by representatives of the Rapides Parish School Board and of St. Mary's.
We pretermit any discussion of this issue, in light of our finding that the defendants, St. Mary's Residential Training School and the Roman Catholic Diocese of Alexandria, were not liable to the plaintiff. For this reason, we render judgment dismissing the third party demand of St. Mary's Residential Training School and the Roman Catholic Diocese of Alexandria against the Rapides Parish School Board.

CONCLUSION
For the foregoing reasons the judgment of the trial court is affirmed in part and reversed in part. Judgment is rendered in favor of plaintiffs and against the Rapides Parish School Board in the amount of $16,565, together with legal interest from date of judicial demand, until paid. Judgment is rendered in favor of the defendants, St. Mary's Residential Training School and the Roman Catholic Diocese of Alexandria, rejecting the plaintiffs' suit, with prejudice, as to these defendants. Judgment is further rendered dismissing the third party demand of St. Mary's Residential Training School and the Roman Catholic Diocese of Alexandria against the Rapides Parish School Board. Court costs, both at the trial and appellate levels, are to be paid by the defendantappellee, Rapides Parish School Board.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.