631 So.2d 604 (1994)
LK and LK, Individually and as Administrators for the Estate of the Minor, AK, Plaintiffs/Appellants,
v.
Harry REED and the Evangeline Parish School Board, Defendants/Appellees/Appellants.
No. 93-659.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
Christopher J. Roy, Alexandria, for LK and LK, Indiv. etc.
*605 Guy Olden Mitchell III, Ville Platte, for Harry Reed, et al.
James L. Pate, Lafayette, for Evangeline Parish School Bd.
Carol L. Haynes, New Orleans, for State of Louisiana, Through Dept. of Hospitals.
Before GUIDRY and YELVERTON, JJ., BERTRAND,[*] J. Pro Tem.
LUCIEN C. BERTRAND, Jr., Judge Pro Tem.
This civil appeal arises from a suit filed by L.K. and L.K., individually, and on behalf of their minor daughter, A.K., as a result of a sex offense committed against A.K. Named as defendants were the offender, Harry Reed, and the Evangeline Parish School Board. After a bench trial, the trial judge dismissed the School Board and rendered judgment against Harry Reed. Damages in the amount of $20,000.00 for A.K. and $5,000.00 for her parents were awarded.
All parties have appealed or answered the appeal. The plaintiffs contend the trial court erred in its factual finding of consent on the part of A.K., in its dismissal of the School Board, and in its award of inadequate damages. Harry Reed answered the plaintiffs' appeal and contends the trial court erred in finding that a tort was committed and in awarding excessive damages. Even though no judgment was rendered against the School Board, the School Board also answered the plaintiffs' appeal and alleges that no tort was committed by Harry Reed.

FACTS
On February 4, 1991, A.K. and Harry Reed were both special education students at Pine Prairie School. A.K. was a 13 year old seventh grader and Harry was an 18 year old junior. Harry testified that he was in the special education program because of a learning disability. A.K. is classified as mildly mentally retarded with an IQ in the range of 64-74. Although they are not in the same class, A.K. and Harry knew each other and conversed on occasion.
The plaintiffs' position in this case is that A.K. was forced to have sex with Harry through coercion and intimidation. A.K. testified that on the morning of February 4, two girls in her class took her by the hand to an old storage building at the back of the campus and told her to have sex with Harry Reed. A.K. testified that physical harm was threatened if she did not comply. A.K. then said that Harry was inside the building waiting for her, and when she arrived, he took off her clothes and they had sex. She verbally protested and cried, but did not attempt an escape or otherwise try to prevent the act. Essentially the same events occurred approximately five hours later during the noon recess.
The defendants attempted to prove that the sexual acts were consensual and were initiated by A.K. Harry testified that on February 4, while riding the bus to school, he was approached by one of A.K.'s classmates who told him A.K. wanted to have sex with him. He agreed to have sex with A.K. and discussed with one of his own classmates potential locations. Through these intermediaries, Harry arranged to meet A.K. at the storage building before classes started and again at the noon recess whereupon they had sex on both occasions. He testified that he did not force A.K. to have sex, nor did she protest in any way.
The girls involved with A.K. that morning generally testified it was A.K.'s idea to have sex with Harry and that she was not upset by the events of February 4. Harry's classmate testified that he went with Harry, A.K., and Nicole Fontenot to the storage building to "make love." He and Nicole kissed and he did not know what Harry and A.K. did.
Two days later, A.K. told her parents what had happened. Her father immediately went to the sheriff's office to press charges against Harry Reed. As a result, Reed pled guilty to carnal knowledge of a juvenile and received a probationary sentence. A.K.'s parents took her out of school and began teaching her at home. A.K. and Harry have not *606 spoken to each other since the February 4 incidents.
As damages, plaintiffs allege that A.K. has suffered psychological injuries and a recurrence of a pre-existing seizure disorder. Dr. Reuben Roy, an adolescent psychiatrist who saw A.K. three weeks after the incidents at issue and again two years later, described her as immature, infantile, and dependent, and diagnosed her as suffering from depression and post traumatic stress disorder. He said that she has low self esteem and is aphonic, meaning that she speaks hardly at all. When asked if he thought A.K. might have consented to the sexual acts with Reed, Dr. Roy stated:
[T]hat this girl would voluntarily engage in sex at all would be like for me to imagine a Volkswagen flying. Of course, it is possibly possible, but it is beyond the realm of my comprehension that she would have.
Dr. Stuart Kutz, a psychologist who tested and evaluated A.K. on three occasions almost two years after the sexual activities occurred, characterized A.K. as severely depressed, anxious, shy, compliant, and suffering from post traumatic stress disorder. He attributed her depression and stress to the assaults by Reed and said that she had relatively few coping skills to rely on. He said that she is not the type of youngster who would have made a decision to have sex in the daytime at school. However, Dr. Kutz did say that she could have been intimidated into such an activity:
Well, if you couple her limited intellectual functioning with her personality style, I believe that it is possible for a youngster like that to be intimidated into behaving in ways that are contrary to what they would like to do or to what they know is right and wrong.
The plaintiffs also presented the testimony of Mr. Samuel Fusilier, a licensed clinical social worker. He, too, thought that A.K. was depressed as a result of these incidents. He described her as "not a very happy person" and recommended further treatment, as did Drs. Kutz and Roy.
The defendants did not dispute the diagnosis and evaluations of A.K.'s psychological condition. However, they argued that her problems are the result of guilt from having participated in consensual sexual conduct. They further argued that her strict Pentacostal upbringing caused her to rebel and then to suffer from guilt as a result of her rebellion. However, the defendants did not present any evidence in support of this theory.

ACTION OF THE TRIAL COURT
The plaintiffs' theory of liability against the School Board is twofold. They contend the School Board failed in its duty to properly supervise its students and failed to properly repair and keep locked the old building where the sexual offenses occurred. They argue the School Board should be strictly liable under the doctrines of attractive nuisance or building in ruin. The trial judge denied liability, finding no breach of the duty to supervise teenage students, and also finding that the building in question did not present an unreasonable risk of harm and did not cause the injuries complained of.
Concerning the liability of Harry, the trial court found that A.K. consented to having sex with Harry and in fact instigated the two acts of intercourse herself. However, he felt bound by the 1926 case of Brunei v. Deshotels, 160 La. 285, 107 So. 111 (1926), which upheld a cause of action for damages by the mother of a girl under the age of 18 who was seduced by a minor boy. In Brunet, the court concluded that because an unmarried female under the age of 18 [now 17] cannot legally consent to sex for purposes of the crime of carnal knowledge, then likewise, she "cannot be regarded as having reached the age of discretion" for purposes of a civil suit for damages. 107 So. at 112. In other words, the cause of action for seduction was not barred by the plaintiff's consent. The case was remanded for trial on the merits.
The girl in the Brunet case was alleged to have consented to the sexual activity. In the instant case, the trial judge found consent on the part of A.K. According to La.R.S. 14:80(1), consent by the female is actually an element of the crime of carnal knowledge of a juvenile. Both the Brunet court and the trial court herein determined that the factual consent necessary to support a conviction under *607 La.R.S. 14:80 does not constitute legal consent which could be raised as a defense in a tort suit under the same facts. The question before us is whether this rationale is correct.

ANALYSIS
We address briefly at the outset the dismissal of the plaintiffs' suit against the School Board. We agree with the trial judge's factual finding that the School Board properly supervised its students. Constant and/or individual supervision is not required by law and, as a practical matter, could not be carried out. See Patterson v. Orleans Parish School Board, 461 So.2d 386 (La.App. 4th Cir.1984). We further agree with the trial judge's conclusion that the building in question, regardless of its condition, did not cause the plaintiffs' damages. Therefore, there can be no liability on the part of the School Board.
We turn now to the judgment rendered against Harry Reed and the factual finding of consent on the part of A.K. In the Brunet case, Chief Justice O'Niell dissented from the holding of the majority and made the following comment:
What the statute says is that, if a person over the age of 17 years shall have carnal knowledge of an unmarried girl between the ages of 12 and 18 years, with her consent, he shall be deemed guilty of a felony. But it does not follow, by any means, that he is liable in damages to her for the natural consequence of what he has done with her consent. It seems anomalous to say that a person can have a right of action for damages resulting from a criminal act which he or she consented to and participated in, and without whose consent and participation the crime could not have been committed.
107 So. at 113 (O'Niell, C.J., dissenting).
This comment exposes the anomaly created by the trial court's holding, which necessarily entitles any carnal knowledge victim to civil damages. Under the trial court's holding, a girl could provoke a criminal prosecution against a sexual partner and recover damages from him, both as a result of her willful and voluntary actions in consenting to, or instigating, a sexual liaison. This rationale defies the rules of Louisiana tort law and cannot be upheld.
We begin our discussion by way of analogy. Under La.R.S. 14:32.1, a person may be convicted of vehicular homicide if he kills another while operating a motor vehicle while under the influence of drugs or alcohol. The victim's survivors can file a tort suit for wrongful death under La.C.C. Art. 2315.4, but they are not automatically entitled to general, special, and exemplary damages. The court must examine the facts of the accident, the level of intoxication, causation, and whether the victim was comparatively at fault; in short, the burden of proof in such a wrongful death suit goes beyond merely proving the elements necessary for conviction under La.R.S. 14:32.1. Further, the criminal presumption of alcohol influence does not apply in civil cases; it must be proved by competent evidence. See La.R.S. 32:622.
Similarly, under La.R.S. 14:35, the participants in a barroom brawl can be convicted of simple battery, for example. A victim, whether or not also a participant, can sue for civil damages under La.C.C. Art. 2315. Again, an award of damages, or a finding of tort liability, is not automatic simply because a battery was committed. The facts of the brawl must be examined, including any participation by the victim, any provocation by the victim, the willingness of the victim to remain at the scene rather than retreat, and other relevant circumstances.
In the case sub judice, Harry Reed was convicted of carnal knowledge of a juvenile. His victim filed a civil suit for damages. Following general principles of Louisiana tort law, we must look beyond the elements of the crime of carnal knowledge to determine if A.K. and her parents are entitled to damages. Specific factors which must be examined are credibility, comparative fault, and injuries alleged.
The credibility of the participants is an essential determination in a civil suit for sexual assault. In Kirkwood v. McFarland, 47 So.2d 74 (La.App. 1st Cir.1950), the father of a minor girl sued the father of a minor boy for damages from an alleged rape. The *608 court found that intercourse had occurred, but that it was not forcibly done as testified to by the girl. The court held that a tort was not committed and no damages were awarded.
In Mays v. Pico Finance Co., Inc., 339 So.2d 382 (La.App.2d Cir.1976), writ denied, 341 So.2d 1123 (La.1977), an adult female sued an adult male for rape. The appellate court affirmed the findings of the trial judge, i.e., that the plaintiff had not "entirely consented" to all of the acts of the defendant and that he was guilty of wrongful conduct toward her. Credibility of the participants was determinative.
In the instant case, the trial judge did not find A.K.'s deposition testimony to be credible. (She did not testify at trial because of her apparent inability to make herself understood in a public forum.) The trial judge found that A.K. consented to and instigated the acts of intercourse with Reed. However, he concluded that her consent was meaningless given her legal status as a minor.
We agree that A.K.'s "consent," if it in fact was given, can be vitiated by factors such as her age. Nevertheless, we disagree with the trial judge's legal conclusion that age alone can fully invalidate consent to sexual intercourse. We believe the better analysis must include the principles of comparative fault.
As discussed supra, A.K., Harry and the other students involved in the events at issue gave diverging testimony of what actually took place on February 4. What each child said to the others that morning could have been completely misinterpreted or taken out of context. A.K. may have been unable to communicate or express her fear and lack of consent to the extent that she appeared to Harry to be a willing participant. The mere fact that Harry was older, bigger, and stronger, not to mention a member of the opposite sex, could have been interpreted by A.K. as force and intimidation. Of course, it is also possible that all or any of the witnesses could have testified untruthfully.
The trial judge's finding of consent on the part of A.K. is a credibility determination that is entitled to great weight. Given the disparate testimony in the record, we will not disturb this factual finding. We must, however, examine how A.K.'s consent measures in terms of comparative fault.
The evidence is undisputed that at the time of these events A.K. was a 13-year-old girl with minimal intellectual and social skills. She was shy and obedient and had never had a boyfriend. She had a history of seizures for which she took daily medication. Her family was poor in financial assets but rich in religious beliefs. In the year preceding these events, A.K.'s father was involved in an accident which rendered him a paraplegic, and A.K.'s mother donated a kidney to A.K.'s younger sister, a surgery requiring extended visits to New Orleans.
A.K.'s family stress coupled with her age, intellect, and social skills, render her consent, from a legal standpoint, almost meaningless. Accordingly, we assess A.K.'s fault at 5% and reduce the damages awarded to her by that percentage.
In support of this determination, we cite the case of Morris v. Yogi Bear's Jellystone Park, 539 So.2d 70 (La.App. 5th Cir.), writ denied, 542 So.2d 1378 (La.1989), wherein the Second Circuit affirmed a finding of 12% comparative fault by a 13-year-old girl who started drinking with three previously unknown 17-year-old boys. She voluntarily went off to a secluded spot with one of the boys. The girl was eventually forcibly raped by all three boys and suffered severe emotional and psychological injuries as a result. The trial court's finding of comparative fault was affirmed. See 539 So.2d at p. 73, n. 1, and at p. 78.

DAMAGES
In this appeal, the plaintiffs contend the trial judge awarded inadequate damages, and Reed argues the damages awarded were excessive. The range of awards made in sexual offense cases is extremely broad. See Guidry v. Rapides Parish School Board, 560 So.2d 125 (La.App. 3d Cir.1990) ($15,000); Samuels v. Southern Baptist Hosp., 594 So.2d 571 (La.App. 4th Cir.) writ denied, 599 So.2d 316 (La.1992) ($450,000); Doe v. City of New Orleans, 577 So.2d 1024 (La.App. 4th *609 Cir.), writ denied, 580 So.2d 924 (La.1991) ($55,000); Edwards v. State, 556 So.2d 644 (La.App. 2d Cir.1990) ($23,000); Morris, supra ($180,000); Mays, supra ($5,000).
The injuries alleged by the plaintiffs include psychological and emotional problems as well as a recurrence of A.K.'s seizure disorder. We find insufficient evidence to support the latter allegation. Concerning the psychological and emotional problems, we agree with the trial judge that $20,000.00 will adequately compensate her for her injuries. Her complaints appeared to the trial judge to be exaggerated, and we will not disturb this finding in the absence of manifest error. See Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). We find $20,000.00 to be a fair and reasonable award given the circumstances of this case. We likewise affirm the award of $5,000.00 to L.K. and L.K.
For the foregoing reasons, we affirm the judgment rendered against Harry Reed in favor of L.K. and L.K., individually, and on behalf of their minor daughter, A.K., but amend that judgment to reflect 5% comparative fault on the part of A.K. We affirm the dismissal of the Evangeline Parish School Board.
Costs of this appeal are assessed equally to the plaintiffs, Mr. Reed, and the School Board.
AFFIRMED, AS AMENDED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.