DOUCET, Judge.
Plaintiffs, James and Juanita Richard, in their individual capacity and as natural tutor and tutrix of their minor child, Shawn, appeal from a judgment dismissing their suit in favor of defendants, Mr. and Mrs. Joseph Mangion, and State Farm Fire & Casualty Insurance Company.
The issue presented on appeal is whether the trial judge erred in finding that Shawn voluntarily participated in an altercation with Jeremy Mangion, Mr. and Mrs. Man-gion’s son. The undisputed facts show that Jeremy and Shawn fought on the afternoon of May 8, 1985 at an outdoor hangout known as the “rope swing” located at the rear of some residential lots in their Lafayette neighborhood. During the fight Jeremy struck Shawn in his right eye causing later hemorrhaging in the eye. He underwent two operations and his parents incurred over $15,000 in related medical expenses.
Shawn was thirteen years old and Jeremy was fourteen at the time of the fight. Shawn had only recently moved into Jeremy’s neighborhood. Both attended the same school, a grade apart, and rode on the same school bus each morning. Animosity between the boys developed after Jeremy made a derogatory comment to Shawn one morning regarding the trousers he was *415 wearing. This incident occurred at a bus stop and, after Shawn retorted, “kiss my ass,” Jeremy told him to move to another bus stop and kicked him in his buttocks.
Another incident occurred several days before the altercation in question. Two witnesses testified that the boys had been scheduled to fight one day but Shawn did not show up. The next day Jeremy and several boys and girls walked over to Shawn’s bus stop to ask Shawn why he hadn’t appeared. Shawn testified that Jeremy came up to him and asked him if he wanted to fight. Jeremy and Shawn apparently began squaring off but no actual blows were exchanged. When they saw the school bus coming, both boys stopped. But then Jeremy made a sudden move, Shawn raised his hands or fists in a defensive gesture, and Jeremy kicked Shawn in his groin. Shawn ran home while the others boarded the school bus. As the bus proceeded down the block, Shawn’s father came running up, stopped the bus, and confronted Jeremy. Shawn then got back on the bus and walked up to Jeremy, who was seated, and glared at him. Shawn testified that he did not challenge Jeremy to fight as Jeremy claimed. Mark Co-meaux, a friend of Jeremy’s, stated that other children on the bus chided Shawn for not showing up for the fight. Mark recalled that Shawn said to Jeremy, “Well, let’s fight this afternoon.” No fight occurred that day, however.
On the afternoon of the fight in question there was much talk among the children that Jeremy and Shawn were going to fight. One witness, Kevin Alexander, stated that a time and place had been set for the fight. Laura Comeaux, Mark’s sister, stated that Jeremy told Mark there was going to be a fight. Mark confirmed this and stated that the agreed-upon time for the fight was 4:30 p.m. Jeremy testified that Shawn had been telling people that he wanted to fight him but did not remember that he and Shawn agreed to fight at a certain time. However, he also said that he “somehow” understood the fight was supposed to be at 4:30 p.m. at the rope swing. When questioned if he clearly understood that there was to be a fight between he and Jeremy at a certain time and place, Shawn answered, “not really.”
Jeremy testified that he did not intend to show up for the fight but Kevin Alexander came to his home and told him Shawn was waiting at the rope swing to fight. Jeremy and Mark Comeaux went to the rope swing but no one else was there. Other youths began arriving at the scene including Mark’s sister, Laura, another girl, Amity Breaux, and Chad and Todd Pruitt, the latter a friend of Shawn’s. After going to Jeremy’s, Kevin Alexander went to Shawn’s home and told him that Jeremy was waiting for him. Shawn said he decided to go ahead and “get it over with.” He admitted he was fully aware there might be a fight but also thought he and Jeremy could “talk out” their differences.
Shawn first stated that when he arrived at the rope swing Jeremy came up to him and said, “Well, you want to fight,” but Shawn didn’t answer. Whereupon, Jeremy pushed him and shoved his knee into his stomach. However, Shawn later changed his story, testifying that there was a pushing match between the two before the fight. He said Jeremy pushed him, he backed off, Jeremy pushed him again and that’s when the fight started. He also later stated that he didn’t remember what Jeremy said to him before the fight. Soon after the fight began, Jeremy got Shawn in a headlock and hit him six to eight times in his face and head. It appears that at least some of these blows were prompted by Shawn’s swinging his fists around to strike Jeremy even as he was in the headlock. Shawn said he was trying to strike Jeremy to get out of the headlock. Jeremy released Shawn from the headlock and threw him into a shallow ditch. Shawn jumped up, nose bleeding, and charged at Jeremy swinging wildly. Jeremy ducked and hit Shawn once in his eye. • That was the end of the fight. Jeremy started to leave but was called back by Shawn and his friend, Todd Pruitt, who were yelling that Shawn wanted to fight some more. Shawn had offered Todd $5.00 to hit Jeremy. When Jeremy walked back over, Todd hit him once and Jeremy ran away as Shawn laughed.
*416 Jeremy testified that he didn’t remember who initially charged who that day, but he basically reiterated Shawn’s testimony regarding the headlock and hitting. He said he wanted to stop when he bloodied Shawn’s nose, so he pushed him away into the ditch. But Shawn got up and swung at him so he hit him once more, in the eye. That last punch appears to have been the one that caused the later hemorrhaging. As a result of the injury, Shawn has a greater than normal likelihood of developing glaucoma and/or a detached retina. His vision in the affected eye has improved to 20/25, near perfect vision, but it was a long recuperative period. Shawn’s sports activities are limited due to the eye injury.
There was sketchy, conflicting, and dim recollection by witnesses to the fight as to who actually made the first move. Overall, the evidence seems to preponderate in favor of a finding that Jeremy made the first move. However, it appears that both went to the scene contemplating a fight. Todd Pruitt, Shawn’s friend, testified that Jeremy pushed Shawn first, Shawn swung back, and then they both started swinging and hitting each other. Todd also stated that Shawn said he was going to be there to fight and that he appeared fully willing to fight.
The trial judge found that Jeremy Man-gion was the initial instigator between the boys from the first meeting. He further found that the fight appeared to have been instigated by friends of the boys. However, he further found that both Jeremy and Shawn went to the scene expecting to engage in fisticuffs, neither was the aggressor, and neither used excessive force.
On appeal plaintiffs claim that Jeremy was the aggressor in the fight and that he attacked Shawn without justification or provocation. Defendants claim that Shawn voluntarily participated in the altercation, impliedly consenting to being struck in the eye by Jeremy.
We initially recognize that the trial court’s finding that Shawn voluntarily participated in the altercation and that neither boy used excessive or unnecessary force are findings of fact which may not be disturbed unless, (1) the record evidence does not furnish a sufficient basis for the finding, or (2) that finding is clearly wrong. Virgil v. American Guar. & Liability Ins., 507 So.2d 825 (La.1987); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The defense of consent to an intentional tort was examined in Andrepont v. Naquin, 345 So.2d 1216 (La.App. 1st Cir.1977). The court stated, “The defense of consent in Louisiana operates as a bar to recovery for the intentional infliction of harmful or offensive touchings of the victim. Consent may be expressed or implied; if implied, it must be determined on the basis of reasonable appearances. When a person voluntarily participates in an altercation, he may not recover for the injuries which he incurs, unless force in excess of that necessary is used and its use is not reasonably anticipated. The use of unnecessary and unanticipated force vitiates the consent. For example, when a party voluntarily engages in a fist fight and his adversary suddenly reveals a concealed or dangerous weapon, he does not necessarily consent to the use of such an instrument.” (citations omitted)
The evidence shows that Jeremy was the instigator of bad feelings between the boys. In fact, he committed two batteries on Shawn before the fight in question. However, we agree with the finding by the trial judge that both Jeremy and Shawn went to the rope swing prepared to engage in fisticuffs and fully contemplating the altercation. There is evidence that Shawn, in anger, challenged Jeremy to a fight. The evidence shows the idea of a fight was actively advanced by classmates. The evidence also establishes that, when Shawn left the safety of his home to meet Jeremy at the rope swing, he understood or should have understood that his showing up would demonstrate his willingness to fight Jeremy. By showing up at the rope swing, knowing Jeremy was waiting to fight with him, Shawn implied to Jeremy that he was willing to engage in a fight and incur blows. When two parties expressly or impliedly agree to fight the consent of one is not vitiated merely because the other *417 strikes the first blow. It is not necessary that simultaneous blows be struck. It is unfortunate that Shawn was so badly injured, but his alternative was to stay at home that afternoon. We recognize the tremendous peer pressure in these situations, but peer pressure does not vitiate consent.
We also find no error with the trial judge’s finding that no unnecessary or excessive force was employed by either boy. It was a fistfight and no weapons were involved. Shawn was only a little smaller than Jeremy according to the testimony of most witnesses. Although Jeremy did hit Shawn in the face up to eight times while he had him in a headlock, we do not find that this was unnecessary or excessive force. It appears that Jeremy hit Shawn more than he would have while he had him in the headlock because he became angry when Shawn hit him. After Jeremy pushed Shawn into the ditch, Shawn charged back at Jeremy. Up until this point the only obvious injury to Shawn was a bloody nose. After Shawn charged back at him, Jeremy hit him one last time, in the eye. There is no indication at all that Jeremy intended to maim Shawn.
In conclusion, we find no error in the trial court judgment. For the reasons assigned, we affirm the judgment of the trial court. Costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.