704 So.2d 1240 (1997)
John DOE, et al., Plaintiffs-Appellants,
v.
Julius JEANSONNE, et al., Defendants-Appellees.
No. 97-795.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1997.
Rehearing Denied February 19, 1998.
*1241 Miles A. Matt, Lafayette, for John Doe, Indiv., etc.
Lewis H. Pitman, Jr., New Iberia, for Julius Jeansonne, Indiv., etc.
L. Lane Roy, Lafayette, for Hazel Standridge.
Julius Willis Grubbs, Jr., New Iberia, for Sue Martin.
Before THIBODEAUX, AMY and SULLIVAN, JJ.
THIBODEAUX, Judge.
Fourteen-year old K.M. and fifteen-year old J.J. attended a party for young teenagers held at the home of Mrs. Sue Martin and hosted by Mrs. Hazel Standridge. K.M. had sex with J.J. during the party, became pregnant and subsequently bore a child. Soon thereafter, her parents, Henrietta Marks and John Marks, sued Mrs. Martin, Mrs. Standridge, and Julius Jeansonne, father of minor J. J., individually and on K. M.'s behalf, for alleged damages sustained as a result of the negligent supervision exercised by the defendants. The trial judge granted motions for summary judgment in favor of Standridge and Martin. He found that there was no genuine issue of material fact as to the reasonableness of the supervision exercised during the party and as to K. M.'s consensual act. The Markses appeal the granting of the motions for summary judgment in favor of Standridge and Martin.
We hold that there exist genuine issues of material fact as to the reasonableness of the supervision and as to K. M.'s consent. Therefore, we reverse the judgments of the trial court and remand for a trial on the merits.

*1242 I.

ISSUES
In order to resolve this matter, we are compelled to determine:
1. whether the plaintiffs established the existence of a genuine issue of material fact as to the reasonableness of the supervision and control employed by the defendants at the party; and
2. whether there exists a genuine issue of material fact regarding K. M.'s consent to participate in the act.

II.

FACTS
On December 16, 1994, Mrs. Hazel Standridge hosted a party for her teenaged daughter at the home of Mrs. Sue Martin. K.M. was invited to the party and was driven there by her father, John Marks, who met Mrs. Martin upon arrival. Mrs. Martin greeted him, gave him a tour of her home, and advised Mr. Marks that she and Mrs. Standridge would be keeping an eye on everything that night. Mr. Marks did not speak with Mrs. Standridge because she had not arrived yet, but left feeling satisfied that she and Mrs. Martin would be properly chaperoning the party.
The party essentially was a small impromptu gathering of teens. It was called a "Christmas vacation party" and was attended by approximately twenty boys and girls between the ages of thirteen and sixteen. Some of the girls attending the party, including K. M., stayed overnight for a slumber party afterwards.
At an uncertain time during the evening near the end of the party, K.M. and J.J. entered the bathroom on the downstairs floor of the house, and engaged in intercourse. K.M. alleges that once they were inside of the bathroom, J.J. began asking her to have sex but she repeatedly said no because she was scared. She alleges that she reached for the doorknob once because she wanted to leave, but J.J. pushed her hand away. Although she denies feeling threatened by J. J., she stated that she ultimately gave in to him because of his pressure and continued requests. In her words, she became tired of him asking and finally gave in by telling him, "whatever." K.M. states that they left the bathroom after someone came to the door and told J.J. that his ride was leaving him. K.M. remained overnight for the slumber party and was picked up the next day by her father.
According to Mrs. Standridge, however, the party was basically uneventful. She was unaware of the event that took place between K.M. and J.J. in the bathroom that night, although she acted as the primary chaperone from the time she arrived at the party at 6:30 p.m. until it ended at 11:00 p.m.
Mrs. Standridge stated that after she arrived at Mrs. Martin's residence, she remained downstairs for twenty or thirty minutes and talked with some of the kids who were already there. Thereafter, she stated that she came downstairs every 15 or 20 minutes for the entirety of the night. She contends that her routine included going into the downstairs bedroom and from there walking throughout the downstairs to check on everyone. The bottom floor was described as an open area, which includes a large living room and adjoining bedrooms and one bathroom.
From the living room area, Mrs. Standridge would walk onto the outside patio in the back of the house where some kids were sitting around. From there, she would then walk to the front door and come in and walk around again on the inside. Mrs. Martin admittedly came downstairs only once or twice during the night, and otherwise remained upstairs so as to allow her young niece and Mrs. Standridge to conduct the party.
The only incident regarding K.M. and J.J. that Mrs. Standridge had any knowledge of occurred fairly early in the evening. Mrs. Standridge said that she saw K.M. and J. J., lying on one of the beds in a bedroom kissing. The doors were open and there were other teens around, yet they were unaware of the fact that she had encountered them. They stopped the kissing when they did see her, but she did not feel the need to say anything to them since they had corrected *1243 themselves. The only reprimand she gave them was to point a finger at them and to give them a gesturing look to let them know that the behavior was unacceptable. She did not observe any other improper activity between them or any of the other teens for the remainder of the evening.
Two other teens attending the party admitted observing K.M. and J.J. "making out" at other times during the party in the living room of the house and in a downstairs bedroom. One young man testified during a deposition that he was in one of the bedrooms with K.M. and J.J. and observed them lying in the bed, under the covers and claimed to have seen K. M.'s underwear on the floor. Although this room was not closed off to the living room area, the lights were off. It is not clear exactly how long the two were in the bed, but the same young man stated that when K.M. and J.J. entered the room, soon thereafter he told them they had to leave because he was there first. He admitted to having been in that same bedroom sitting on the bed, "making out" with another young lady for at least an hour. He remembered Mrs. Standridge coming in maybe twice during which time she asked them what they were doing but did not make them leave the room. However, he did not see Mrs. Standridge or Mrs. Martin during the time that J.J. and K.M. were in the bedroom under the bed covers.
Another young man testified that he also saw K.M. and J.J. together that night. He stated that they were kissing and that he saw K.M. kissing J. J.'s neck and rubbing his leg. This was said to have taken place in the living room and lasted perhaps for thirty or forty-five minutes. This same young man, who admittedly hung outside smoking most of the night, saw a fight take place outside between two other boys at the party, and also witnessed a heated argument take place between two girls in attendance at the party, which also took place outside. Neither Mrs. Martin nor Mrs. Standridge had knowledge of any of these activities.
K.M.'s parents had no knowledge about what took place that night until the following January when K.M. discovered she was pregnant and told her parents. They essentially urge that their daughter was coerced into engaging in the sexual act by J.J. as a result of his constant requests for sex, and that if supervision had been proper, the situation could not have arisen that ultimately resulted in K.M. conceiving and giving birth to a child. As a result, the Markses filed suit against Mrs. Martin, Mrs. Standridge and J. J., through his father, Julius Jeansonne. The petition alleged injuries and damages for the tortious conduct of defendants in a non-exclusive list of particulars which included: (1) breach of agreement by Martin and/or Standridge to watch over, supervise, care for, chaperone and/or promise to keep K.M. free from violation and/or harm; (2) failure of Martin and/or Standridge to properly and prudently exercise care, discipline, supervision, and/or control over invitees on the premises; (3) failure of Martin and/or Standridge to warn the Markses of the actual lack of care, discipline, supervision, and/or control in which they engaged over the invitees; and (4) failure of Martin and/or Standridge to stop, prohibit and/or otherwise prevent J.J. from engaging in sexual misconduct, assault and battery of K. M.; (5) J.J. forced and coerced K.M. to engage in sexual intercourse resulting in wrongful conception; and (6) failure by J. J.'s father to exercise proper and prudent care, discipline, supervision and/or control over J. J.
A Motion for Summary Judgment was filed by Mrs. Standridge on June 4, 1996 in which she asserted that she was entitled to judgment as a matter of law because there was no genuine issue of material fact that she had exercised reasonable care in the supervision of the party invitees and no genuine issue of material fact that K.M. was not the victim of sexual misconduct, assault and battery, but was a consenting participant in the sexual conduct. Mrs. Martin filed a Motion for Summary Judgment on June 19, 1996 and primarily relied upon the overview of claims, facts and law in Mrs. Standridge's motion and memorandum. Both motions were denied on September 13, 1996 because the trial judge felt adequate discovery had not yet been completed. Upon the completion of discovery, Mrs. Martin reurged her Motion for Summary Judgment on January 17, 1997 *1244 and was granted a dismissal by the trial judge on February 21, 1997. Mrs. Standridge filed a Supplemental Motion for Summary Judgment on February 28, 1997 and was granted a dismissal on March 5, 1997. The claims against the Jeansonne defendants were also dismissed at that time. On April 25, 1997, the trial judge sanctioned the attorney for the Markses pursuant to La.Code Civ.P. art. 863 after finding that plaintiffs' suit had no factual or legal basis and that the plaintiffs' counsel should have either not filed the suit or dismissed it upon discovering that his allegations were unfounded. The only subject of this appeal is the granting of the motions for summary judgment in favor of Mrs. Martin and Mrs. Standridge.

III.

LAW AND DISCUSSION
The Markses contend that the trial judge erred in granting the summary judgments in favor of Mrs. Martin and Mrs. Standridge because the undisputed events that are alleged to have taken place during the party, of which neither chaperone had any knowledge, establish the existence of a genuine issue of material fact as to the reasonableness of the supervision employed by the defendants. The plaintiffs have directed this court to the deposition testimony of the young man who witnessed the fight that took place outside during the course of the night between two young men, and the heated argument between two girls, which also occurred outside in the front of the house. This same young man observed K.M. and J.J. sitting on a couch kissing and petting for possibly thirty minutes or more in the open living room area, apparently without notice by either chaperone. The testimony from K. M., in which she states she only saw Mrs. Standridge once that night and did not recall seeing Mrs. Martin at all, is also urged as proof that a genuine issue of material fact exists as to the reasonableness of the supervision and control instituted by the chaperones. Moreover, the appellants rely on the testimony of another young man who stated he saw K.M. and J.J. under the bed covers in one of the downstairs bedrooms with the lights off, and with K. M.'s panties on the floor, which is another incident that went unnoticed by the chaperones. In addition, the Markses assert that these two young men and possibly four or more others at the party, knew that K.M. and J.J. had secreted themselves in the bathroom and were having sex, yet the chaperones had no knowledge of this.
The plaintiffs urge that these occurrences, of which Mrs. Standridge and Mrs. Martin were unaware, clearly exhibited a failure to use reasonable care in connection with exercising supervision and control of the attendees at the party. These events, they urge, reveal genuine issues of material fact sufficient to support a finding that the trial judge committed reversible error in granting the motions for summary judgment.
Mrs. Standridge responds to this argument and claims that summary judgment was proper because the uncontested facts reveal that K.M. engaged in consensual sexual intercourse that night. She argues that a person who consents to contact with others may not thereafter sue for the natural results of that contact because that consent undermines a cause of action for alleged sexual torts just as it does for injuries sustained from other torts. See Fricke v. Owens-Corning Fiberglas Corp., 571 So.2d 130 (La. 1990); Richard v. Mangion, 535 So.2d 414 (La.App. 3 Cir.1988).
Notwithstanding these arguments, Mrs. Standridge also argues that the facts are uncontested regarding her assertion that the supervision at the party was reasonable and sufficient under the law. She states that she routinely patrolled the party by walking throughout the house approximately every fifteen or twenty minutes, and that the deposition testimony used by plaintiffs in an effort to create a factual dispute, fails to successfully create a legitimate factual issue. Moreover, she urges the court to consider the consensual and intentional nature of the activity between K.M. and J.J. and states that it was not reasonable to have anticipated such an outrageous breach of social order by K.M. and J.J. when all other facts indicated that the party was an ordinary gathering of young teenagers. Consequently, she was under no duty to prevent the sexual encounter that took place.
*1245 Mrs. Martin asserts essentially the same arguments as those set forth by Mrs. Standridge. She adds in her defense, however, that since she was allowing her niece's daughter to host a party for her young friends, she felt it reasonable that she remain upstairs the duration of the party, and only occasionally venture downstairs herself. She argues that this supervision was reasonable under the circumstances because it was her understanding that this was a Christmas party primarily for thirteen and fourteen-year old children, and although mischief may have been expected, it was not reasonable to anticipate that K.M. and J.J. would engage in sexual intercourse at such an event. She argued that the Markses should have alerted them of their daughter's propensities, in light of the fact that the young lady was known to have had at least one prior sexual encounter.

SUMMARY JUDGMENT

Supervision
Louisiana Code of Civil Procedure article 966 mandates the granting of a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits together show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. Recently amended La.Code Civ.P. art. 966(C)[1] now mandates the granting of summary judgment if the mover shows that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. In the event the movant will not bear the burden of proof at trial on the matter subject to the motion for summary judgment, the movant is only required to reveal to the court the absence of factual support for one or more of the elements essential to the adverse party's claim, action, or defense. La.Code Civ.P. art. 966(C)(2). Thereafter, the burden shifts to the non-moving party to produce factual support that will establish his ability to satisfy his evidentiary burden at trial. Id. If the non-moving party is unable to do so, the motion for summary judgment will be granted. Id. See also Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
Appellate courts undertake a de novo review of motions for summary judgment. Potter v. First Fed. Sav. & Loan Ass'n, 615 So.2d 318 (La.1993). Having done so, we find that the plaintiffs proved the existence of a genuine issue of material fact as to the reasonableness of the supervision and control exercised by the defendants Martin and Standridge.
We begin our analysis by setting forth the duty owed by the defendants, as hostess and homeowner, to those attending the party. In Levert v. Travelers Indem. Co., 140 So.2d 811, 813 (La.App. 3 Cir.1962), this court stated that "the duty of an occupier of premises to an invitee is to exercise reasonable or ordinary care for his safety commensurate with the particular circumstances involved." In situations where children are under the control and supervision of a person who has agreed to be responsible for them, that person must use reasonable care to protect the children from injury. Bordelon v. Pelican State Mut. Ins. Co., 599 So.2d 511 (La.App. 3 Cir.1992). Although such a person is not the insurer of the child, he is required to use reasonable care commensurate with a reasonably foreseeable risk of harm. Id.
Applying the facts of this case to these well-settled principles governing the requisite standard of care owed, we find that reasonable minds could differ as to whether Mrs. Standridge's and Mrs. Martin's supervision of the young teenagers was reasonable. We believe that the deposition testimony offered by the plaintiffs established the existence of genuine issues of material fact. To begin with, Mrs. Standridge testified that she encountered the youngsters lying on a bed kissing in such a manner that they were not aware of her presence. In relation to this fact, we find relevant a statement by our *1246 supreme court: "In situations where children are injured, the known characteristics and instincts of children must be considered in determining whether a person has exercised reasonable care." Freeman v. Wilcox, 303 So.2d 840, 842 (La.App. 1 Cir.1974), writ denied, 307 So.2d 630 (La.1975). Thus, when we take into consideration the fact that these children were viewed in such an amorous position, we believe the average adult would have gained some knowledge as to the sexual propensities of the two at this point, even if such propensities in children in this age group were previously unknown or unexpected. The display by the two which occurred early in the evening, before they had advanced to the point of engaging in intercourse and conceiving a child together, leads us to find that reasonable minds could differ as to whether the level of supervision employed from that moment on, was reasonable.
Moreover, we have also taken into consideration the deposition testimony regarding the accounts of a fight that took place outside between two of the male party attendees, and also the heated argument between two young ladies that also took place outside. Neither Mrs. Standridge nor Mrs. Martin apparently had any knowledge of these events, although Mrs. Standridge alleges that she routinely patrolled the inside and outside of the house in regular fifteen or twenty minute increments. In addition, testimony also exists that states that K.M. and J.J. were seen sitting on a couch in the living room, "making out" for perhaps thirty minutes or more, and they were also seen in a bed together, under the covers with K. M.'s panties allegedly lying on the floor. These events apparently went unnoticed by the chaperones as well.
Our review of the record also uncovered testimony from Mrs. Standridge in which she indicated her presence downstairs from approximately 10:30 p.m. until the party ended at 11:00 p.m. Although she stated that she was rounding the kids up to let them know the party was ending and to make sure they were preparing to leave, she does not recall seeing J.J. or K.M. during that time. Notwithstanding her lack of knowledge about their whereabouts, it is apparent from the depositions given that at least two of the young men at the party, and perhaps more of the teens, knew that J.J. and K.M. were in the bathroom together. We conclude that the testimony alleging that these events took place without the chaperones gaining any knowledge of them, clearly raises genuine issues of fact as to whether the supervision employed was reasonable for this party and for this group of teens.

Consent
The defendants have also asserted in their briefs that K.M. consented to the sexual activity with J.J. and that her consent precluded her from suing for the natural results of that contact, even if the contact proved harmful, and therefore, the summary judgments were properly granted. See Richard, 535 So.2d 414; Fricke, 571 So.2d 130. Although not assigned as error by the appellants, the appellees raised this issue in support of their dismissals via summary judgment and the appellants supplied the court with a lengthy refute. Therefore, we have undertaken this issue as well, in our review of whether the summary judgments were properly granted.
Although there is no testimony in the record from J.J. giving his account of the events that transpired while in the bathroom, K. M., however, states that she repeatedly refused his requests for sex. She testified that she was afraid of getting pregnant and of her parents finding out. In addition, she claims to have made at least one effort to leave the bathroom and made many more requests to do so, but was unsuccessful. On the occasion when she reached for the doorknob, she alleges that J.J. pushed her hand away. Although she never claims to having felt threatened by J. J., she stated that she ultimately gave in after becoming tired of his repeated requests. We believe that this uncontested account raises a genuine issue of material fact as to whether or not she did in fact freely consent to the sexual encounter and, consequently, whether the suit should have been dismissed summarily.
We have not ignored the accounts of a previous sexual encounter by this girl with another young man, and the testimony from others, as well as herself, regarding her kissing *1247 and "making out" with J.J. throughout the evening. However, we believe that her "consent," to have sex, if given, could be vitiated by factors such as the girl's age, and other factors, such as those commonly used in comparative fault determinations. See LK v. Reed, 93-659 (La.App. 3 Cir. 2/2/94), 631 So.2d 604, writ denied, 94-0544 (La.4/29/94), 637 So.2d 461.
In LK v. Reed, A. K., a thirteen-year old, mildly-retarded seventh grade girl and Harry, an eighteen-year old junior, who was also in the special education program because of a learning disability, engaged in sexual intercourse in an old storage building at the back of the campus. The plaintiffs asserted that A.K. was forced to have sex with Harry through coercion and intimidation. A.K. claimed to have been led to the building by two girls in her class that morning and was told to have sex with Harry. She claimed physical harm was threatened if she did not comply. Harry was waiting inside and once she arrived, he removed her clothes and had sex with her. She stated that she verbally protested and cried, but did not otherwise try to prevent the act. The act occurred again during the noon recess, some five hours later. Harry and the girls involved claimed that A.K. was the aggressor and did not seem to be upset by the incidents; however, their testimony conflicted as to what actually took place.
We have examined that case and found that A. K.'s family stress coupled with her age, intellect, and social skills, rendered her consent, from a legal standpoint, almost meaningless. Reed, 631 So.2d 604. We found that she may have been unable to communicate or express her fear and lack of consent to the extent that she may have appeared to be a willing participant. The mere fact that Harry was older, bigger, stronger, and a member of the opposite sex, could have been interpreted by A.K. as force and intimidation.
Although we are not aware of any evidence in this case establishing K.M. or J.J. as being, in any way, mentally deficient, we do find the reasoning applied in LK v. Reed to be controlling on the issue of K. M.'s consent. There is no testimony in the record to refute her allegations that she continuously rebuffed J. J.'s repeated requests for sex, attempted to leave the bathroom but could not, and gave in only after she became tired of his very persistent requests. These unrefuted allegations establish the existence of a genuine issue of material fact as to whether she truly "consented" to the act that resulted in the conception of a child by this fourteen and fifteen-year old couple.

IV.

CONCLUSION
Accordingly, we find that there exist genuine issues of material fact as to the reasonableness of the supervision exercised by defendants, Standridge and Martin, and as to whether K.M. freely consented to the act so as to preclude her from filing suit. Article 966(C) of the Code of Civil Procedure mandates the denial of summary judgment if the non-moving party is successful in showing that he will be able to satisfy his evidentiary burden at trial. Therefore, for the reasons assigned, the judgments of the trial court are reversed and the matter is remanded for further proceedings. All costs of this appeal are assessed to defendants-appellees; other costs are to await final disposition.
REVERSED AND REMANDED.
AMY, J., concurs and assigns reasons.
AMY, Judge, concurring.
I agree with the majority's conclusion that genuine issues of material fact exist as to whether the defendants exercised reasonable care. However, I do not find the consent issue pertinent to the summary judgments granted in favor of Ms. Martin and Ms. Standridge. While that issue may be relevant in the suit as it relates to the Jeansonnes, I do not conclude that consent, or the capacity to consent, is dispositive of the issue of whether the supervision rendered by the defendants was reasonable.
NOTES
[1] La.Code Civ.P. art. 966(C) was amended and reenacted by Act No. 483, § 1 of the 1997 Regular Session to clarify Act No. 9 of the First Extraordinary Session of 1996 and to legislatively overrule all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.