# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# 15-647


**STEVEN GILLESPIE, ET AL.**

**VERSUS**

**CALCASIEU PARISH SCHOOL BOARD, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2013-3781
HONORABLE SHARON D. WILSON, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Marc T. Amy, Judges.


**MOTION TO SUPPLEMENT RECORD GRANTED. REVERSED IN PART; AMENDED IN PART; AND AFFIRMED AS AMENDED.**

**Cooks, J. concurs and assigns reasons.**


**Frank M. Walker, Jr.**
**V. Ed McGuire, III**
**Plauche', Smith, & Nieset**
**Post Office Box 1705**
**Lake Charles, LA 70602**
**(337) 436-0522**
**COUNSEL FOR DEFENDANTS/APPELLEES/APPELLANTS:**
    **Calcasieu Parish School Board**
    **Berkley Insurance Company**

**Thomas A. Filo**
**Somer G. Brown**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, LA   70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFFS/APPELLANTS/APPELLEES:**
        **Steven Gillespie**
        **Leslie Gillespie**
        **Ayasha Gillespie**

**Ronald Richard**
**Richard Law Firm**
**900 Ryan Street, Suite 400**
**Lake Charles, LA   70601**
**(337) 494-1900**
**COUNSEL FOR DEFENDANT/APPELLEE:**
        **Lance Duhon**

**E. Jacob Colonna**
**Colonna Law Firm, LLC**
**One Lakeshore Drive, Suite 1800**
**Lake Charles, LA   70629**
**(337) 656-3212**
**COUNSEL FOR DEFENDANT/APPELLEE:**
        **Lance Duhon**

**AMY, Judge.**

The plaintiffs filed suit on their own behalf and on behalf of their minor daughter against the defendant school board and the defendant teacher, alleging that the teacher engaged in sexual conduct with the minor child. With regard to the school board, the plaintiffs alleged that school officials hired the teacher for his teaching position despite prior knowledge of a similar allegation against him. A jury found in favor of the plaintiffs, apportioning fault to the teacher, the school board, and the child. The jury awarded $250,000 in compensatory charges and $300,000 in punitive damages. The latter award was entered only against the teacher. Both the plaintiffs and the school board appeal. For the following reasons, we reverse in part, amend, and affirm as amended. We also grant the school board's motion to supplement the record.

## Factual and Procedural Background

Steven and Leslie Gillespie, individually and on behalf of their minor daughter,[1] filed this suit, alleging that, while the minor child was a student at Sam Houston High School, a teacher at the school sent the minor child sexually explicit texts, soliciting her to "meet him in his classroom to engage in improper, illegal and sexual acts including, but not limited to, having her perform oral sex on him." The plaintiffs alleged that: "These solicitations and the accompanying acts of improper, illegal and sexual contact and abuse occurred on an almost daily basis for a number of months."

The plaintiffs named the teacher involved, Lance Duhon, the Calcasieu Parish School Board, and, subsequently, the School Board's insurer, Berkley

---

[1] Although the record reflects that Mr. and Mrs. Gillespie's daughter reached the age of majority during the pendency of this matter, we refer to her throughout as the "minor child" in light of her age at the time of the conduct at issue.

Insurance Company, as defendants. The plaintiffs alleged that, at all relevant times, Mr. Duhon was an employee of the School Board at the high school where he worked as a teacher and assistant coach. They asserted that the complained of conduct occurred in his classroom and during school hours.

By amending petition, the plaintiffs argued the School Board was aware that Mr. Duhon had allegedly "engaged in similar unlawful and improper sexual advances and activities with at least one minor child" at another high school where he previously was employed by the School Board. This conduct, the plaintiffs alleged, resulted in "a full investigation" by the School Board in 2007 that resulted in Mr. Duhon not being re-hired upon application to that School. Yet, after Mr. Duhon applied for the position at Sam Houston in 2012, he was hired, despite "actual knowledge of his prior misconduct." As advanced in the petition(s), the conduct now at issue occurred within six months of his hiring at Sam Houston. The plaintiffs suggested that the conduct constituted "willful and w[a]nton and/or intentional torts and infliction of emotional distress" by both Mr. Duhon and the School Board. Additionally, the plaintiffs contended that the School Board "intentionally caused the harm" by failing to properly report the 2007, occurrence to police and/or child protective services, an action they suggested could have prevented the 2012 hiring decision at Sam Houston.

The plaintiffs sought both compensatory and punitive/exemplary damages. Mr. Duhon answered and lodged a general denial based on the facts and suggested the minor child was comparatively at fault. In its answer, the School Board denied the subject conduct was within the course and scope of Mr. Duhon's employment with the School Board. It did, however, acknowledge the occurrence of "an improper and illegal relationship including sexual contact in February and March

2013." The School Board further acknowledged its investigation into Mr. Duhon's conduct with a student following his employment at Barbe High School in 2007, the principal's decision not to re-hire him at that school in 2008, the communication of that decision to the Sam Houston principal while Mr. Duhon's application for employment was considered in August 2012, and his hiring at that time. It denied that its conduct was willful and/or wanton or that it intended to harm the minor child. The School Board further observed that it was the employer of Mr. Duhon from August 2012, "until he was terminated following his arrest in the Spring of 2013."[2]

Additionally, in its answer and amended answer, the School Board advanced statutory limitations of liability for public bodies.[3] It further excepted to the claim of punitive damages.

With regard to fault, the School Board alleged the comparative fault of Mr. Duhon, Mr. and Mrs. Gillespie,[4] and the minor child. On this latter point, the School Board asserted that to the extent the evidence demonstrated that the minor child's "actions were inappropriate, negligent and improper and that they contributed causatively to any damages incurred by plaintiffs, then such negligence and impropriety bars and in the alternative, reduces any award to which plaintiffs might be entitled to recover from this defendant."

---

[2] While criminal proceedings against Mr. Duhon were pending at the time of the February 2015 trial, the investigating State Trooper's report indicates that Mr. Duhon was arrested upon warrants for indecent behavior with a juvenile and prohibited sexual conduct between educator and student. *See* La.R.S. 14:81 and La.R.S. 14:81.4.

[3] *See, e.g.,*, La.R.S. 9:2798.1, La.R.S. 9:2800, and La.R.S. 13:5101, *et seq.*

[4] The School Board did not pursue its theory of comparative fault on the part of the Gillespies. As seen below, it did, however, pursue the theory of comparative fault on the part of the minor child.

In pre-trial proceedings, the trial court granted the School Board's exceptions of no cause of action, dismissing all claims against the School Board for punitive damages. This court subsequently denied the plaintiffs' application for supervisory writs which addressed that ruling, finding that the relators "failed to show that they [would] not have adequate appellate remedy through an appeal following the complete adjudication of [the] matter." *See Gillespie v. Calcasieu Parish Sch. Bd.*, 14-965 (La.App. 3 Cir. 10/28/14) (an unpublished writ ruling).

The matter ultimately proceeded to a jury trial, resulting in a verdict favorable to the plaintiffs. The verdict sheet reflects that the jury found that: 1) the School Board's decision "to re-hire and or fail to supervise Lance Duhon was reckless, outrageous, willful, flagrant or wanton[;]" 2) the "wrongful conduct of the School Board caused damage to the Gillespies[;]" 3) that Mr. Duhon "engaged in intentional misconduct that caused harm to the Gillespies[;]" 4) that Mr. Duhon was "in the course and scope of his employment" with the School Board when the intentional misconduct occurred; and 5) that Mr. Duhon owed "exemplary or pun[i]tive damages to the Gillespies." The jury apportioned 40% of the fault to the School Board; 50% of the fault to Mr. Duhon; and 10% to the minor child. The jury awarded $250,000 in general damages to the Gillespies and $300,000 in punitive damages. The latter damage award was assessed only against Mr. Duhon.

The plaintiffs appeal, assigning as error that:

1) The trial court erred as a matter of law in holding that the Calcasieu Parish School Board could not be held vicariously liable for punitive damages.

2) The trial court committed legal error in reducing Plaintiffs' award by 10%[.]

3) The record is complete and this Court can partially reverse and amend the judgment to correct the trial court's legal errors.

The School Board and its insurer also appeal, asserting that:

1) The jury abused its much discretion in awarding $250,000.00 in general damages based upon the evidence presented concerning [the minor child's] injuries caused by her relationship with "Duhon."

2) The assessment by the jury of 10% fault to [the minor child] for her consensual conduct with Lance Duhon is inappropriately low when compared to other reported decisions on the same issue.

Finally, the School Board has filed a motion with this court seeking to supplement the record with the transcript of a pre-trial hearing on an exception of no cause of action. This motion has been referred to the merits for consideration.

## Discussion

*Motion to Supplement*

We first address the School Board's request to supplement the appellate record with the transcript of a July 2014 hearing conducted on the School Board's exception of no cause of action. As the exception pertains to the plaintiffs' assignment of error regarding punitive damages, the transcript was initially filed with the plaintiffs' application for supervisory writs on the trial court's granting of the underlying exception, and the reviewing panel denied that writ upon a finding that adequate review was available by appeal after a trial on the merits, we grant the School Board's motion. *See Gillespie*, 14-965 (an unpublished writ ruling); *see also* La.Code Civ.P. art. 2128. We further note that the plaintiff has lodged no objection to the motion to supplement.

*Punitive Damages*

The plaintiffs pursued punitive damages under La.Civ.Code art. 2315.3 and La.Civ.Code art. 2317.7 and did so against both Mr. Duhon and the School Board.

5

The School Board filed an exception of no cause of action for that aspect of the petition, questioning the application of either Article to it as an employer. At the hearing on the exception of no cause of action, the plaintiffs conceded the inapplicability of La.Civ.Code art. 2315.7 in light of that Article's specific language.[5] As related above, the trial court granted the exception and dismissed the plaintiffs' remaining punitive damages claim against the School Board. The plaintiffs question that ruling, arguing that the School Board may be assessed with punitive damages for the actions of its employee, Mr. Duhon, under a theory of vicarious liability. Noting that the exception of no cause of action presents an issue of law, and rulings thereon are reviewed *de novo*, we turn to consideration of the assignment. *See Reynolds v. Bordelon*, 14-2362 (La. 6/30/15), 172 So.3d 589.

Louisiana Civil Code Article 2315.3, the punitive damages provision the plaintiffs pursued against the School Board at the time of the hearing on the exception of no cause of action, provides:

**Art. 2315.3.        Additional damages; child pornography**

> In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton and reckless disregard for the rights and safety of the person through an act of pornography involving juveniles, as defined by R.S. 14:81.1,[6] regardless of whether the defendant was prosecuted for his acts.

---

[5] Louisiana Civil Code art. 2315.7 (emphasis added) provides:

> In addition to general and special damages, exemplary damages may be awarded upon proof that their injuries on which the action is based were caused by a wanton and reckless disregard for the rights and safety of the person through criminal sexual activity which occurred when the victim was seventeen years old or younger, regardless of whether the defendant was prosecuted for his or her acts. *The provisions of this Article shall be applicable only to the perpetrator of the criminal sexual activity.*

[6] Much of the conduct alleged by the plaintiffs in this case involved text communications between Mr. Duhon and the minor child. The issue of whether the evidence regarding those communications satisfied the dictates of La.Civ.Code art. 2315.3 is not now at issue and is not discussed herein.

6

In addressing punitive damages provisions, the supreme court has expressed that "[t]he general public policy in Louisiana is against punitive damages." *Chauvin v. Exxon Mobil Corp.*, 14-0808, p. 10 (La. 12/9/14), 158 So.3d 761, 768. Accordingly, such damages are not allowed unless expressly authorized by statute. *Id.*

While compensatory damages remunerate a plaintiff for injury caused by a defendant's act, punitive damages are not intended to make an injured party whole. *Chauvin*, 158 So.3d 761. Instead, punitive damages are sums awarded separate and apart from compensatory damages, and are designed to serve as punishment or a deterrent levied due to "particularly aggravated misconduct on the part of the defendant." *Id.* at 768. The basis for such an award "is the defendant's motives and conduct in committing the particular tort, rather than the tort or injury itself." *Id.* "Thus, the purpose of punitive damages, given to the plaintiff over and above the full compensation for his injuries, is to punish the defendant, to teach the defendant not to do it again, and to deter others from following the defendant's example." *Id.* (Citation omitted).

As the plaintiffs did not allege any type of pornographic conduct by the School Board itself, the plaintiffs approach the claim through the conduit of La.Civ.Code art. 2320, which provides:

> Master and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
>
> Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
>
> In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.

7

> The master is answerable for the offenses and *quasi*-offenses committed by his servants, according to the rules which are explained under the title: *Of quasi-contracts, and of offenses and quasi-offenses*.

Notably, Article 2320 does not state that it permits recovery of exemplary or punitive damages against an employer due to its employee's conduct. Instead, it states merely that "employers are answerable for the *damage occasioned* by their servants and overseers, in the exercise of the functions in which they are employed." *Id*. (Emphasis added.)

Addressing La.Civ.Code art. 2324's imposition of solidary liability against co-conspirators "for the *damage caused* by such act[,]" the supreme court has explained that it is "compensatory damages that recompense a plaintiff *for injury caused* by a defendant's act." *Ross v. Conoco, Inc.*, 02-0299, p. 9 (La. 10/15/02), 828 So.2d 546, 552 (emphasis added). "Punitive damages, on the other hand, are not *caused* by a defendant's act and are not designed to make an injured party 'whole'." *Id.* at 552-53. They are instead designed "to punish the tortfeasor and deter specific conduct to protect the public interest." *Id.* at 553. Addressing the co-conspirator context, the supreme court in *Ross* explained that "the solidarity imposed by Article 2324 cannot be used to assess punitive damages against a party based on the acts of co-conspirators." *Id.* Rather, "[t]o be subject to punitive damages, each co-conspirator's individual conduct must fall within the scope of the applicable penal statute." *Id.*

We observe the proximity between the phraseology of "damage occasioned by[,]" as used in La.Civ.Code art. 2320, and "damage caused by[,]" as used in La.Civ.Code art. 2324. Thus, we find that the supreme court's interpretation of the latter phrase as one involving compensatory damages is applicable to the instant interpretation of the former.

Accordingly, we conclude that the trial court did not err in finding that the plaintiffs did not have a cause of action against the School Board under La.Civ.Code art. 2315.3 via application of La.Civ.Code art. 2320.

This assignment lacks merit.

*Apportionment of Fault*

Both the plaintiff and the School Board question the apportionment of fault to the minor child. Recall that the jury assessed 50% of the fault to Mr. Duhon, 40% to the School Board, and 10% to the minor child. The plaintiffs challenge that latter finding of 10% fault to the minor child whereas the School Board suggests that the minor child's fault should be increased. The School Board suggests that the testimony indicates that the child's conduct was consensual in nature and that jurisprudence supports apportionment of fault to her for her own conduct. The School Board asserts that the apportionment of fault to the minor child should be "adjusted upward" to a range of "25% to 50% fault for her relationship with Lance Duhon."

We first discuss and reject the School Board's assertion that fault was appropriately attributed to the minor child for what it characterizes as a consensual "relationship." Notably, it is not disputed that the minor child was age sixteen at the time of much of the conduct now at issue in this case. Neither is it disputed that Mr. Duhon was, in fact, a teacher at her school, was approximately twenty years her senior, and was arrested following an investigation into his conduct.[7]

---

[7] While prosecution was apparently pending during the trial in this matter, the investigating State Trooper's report indicates that after interviewing the minor child and her father, and after review of certain text messages available on the child's telephone, he obtained a warrant "for the arrest of Lance Duhon for indecent behavior with a juvenile in violation of Louisiana Revised Statu[t]e 14:81 and prohibited sexual conduct between educator and student in violation of Louisiana Revised Statu[t]e 14:81.4." The Trooper explained in the report that, after interviewing Mr. Duhon, he "executed the arrest warrant and placed Duhon under arrest."

Under these circumstances, we find no legal basis for the imposition of fault against the minor child. *See Landreneau v. Fruge*, 94-553 (La.App. 3 Cir. 6/12/96), 676 So.2d 701, *writ denied*, 96-2456 (La. 12/6/96), 684 So.2d 930 (wherein a panel of this court reversed a ten percent apportionment of fault to a minor child in a case involving sexual conduct with a teacher). The School Board suggests that *Landreneau*, is distinguishable from the instant case as the panel in the prior case referenced a psychiatrist who testified that "it was his opinion in cases of child molestation [that] it is not possible for a child to give consent." *Id.* at 707. The School Board asserts that there is no such expert testimony in this case. However, no such specific expert opinion was required on this point.[8] Instead, the absence of consent under these circumstances is apparent given the legislature's criminalization of the conduct now at issue.

We further reject the School Board's contention that jurisprudence supports an assessment of fault to the minor child in this issue as well as an increase in the jury's 10% apportionment to her. Citing *Doe v. Jeansonne*, 97-795 (La.App. 3 Cir. 12/10/97), 704 So.2d 1240, *writ denied*, 98-0754 (La. 5/8/98), 718 So.2d 433, *writ denied*, 98-0770 (La. 5/8/98), 718 So.2d 434; *LK v. Reed*, 93-659 (La.App. 3 Cir. 2/2/94), 631 So.2d 604, *writ denied*, 94-0544 (La. 4/29/94), 637 So.2d 461; and *Morris v. Yogi Bear's Jellystone Park Camp Resort*, 539 So.2d 70 (La.App. 5 Cir.), *writ denied*, 542 So.2d 1378 (La.1989). Without comment on the weight applicable to these earlier appellate cases, we note that the cited jurisprudence does not involve the type of disparity in age(s) seen in the present matter nor does it

---

[8] Although the plaintiffs' expert in clinical psychology was not asked to opine whether a child in such circumstances could "consent," the psychologist offered testimony regarding the child's challenging and traumatic history, the child's vulnerability to the type of conduct involved in this case, and the psychological ramifications of the conduct.

involve the disparity in status between a teacher and student. Rather, those cases involved conduct between those of relatively contemporaneous ages. The plaintiffs' expert psychologist suggested that comparing peer-to-peer conduct and that at issue in this case is akin to comparing "apples and oranges[.]"

Simply, a finding of fault on the part of the minor child in this case is not supportable. We accordingly reverse the 10% apportionment of fault to her and, below, reassess that fault to the School Board. We further recast the judgment to reflect equal apportionment of fault to Mr. Duhon and the School Board and to reflect that general damages in the amount of $250,000 are awarded to the plaintiffs and against Mr. Duhon and the School Board (and its insurer).

*Damages*

Finally, we reject the School Board's contention that the jury abused its discretion in awarding $250,000 in general damages to the plaintiffs. The School Board argues that the jury "was apparently overly influenced by and sympathetic to the harsh circumstances" of the minor child's early years prior to her foster care and adoption by Mr. and Mrs. Gillespie and reached what it argues is an excessive award for general damages.

In multiple pages of its appellate brief, the School Board details the circumstances of the minor child's tumultuous childhood, including prior sexual trauma, her need for counseling given her difficult progression through the foster care system, and teenage conduct which was deemed sufficiently inappropriate so as to require strict discipline by Mr. and Mrs. Gillespie. The School Board suggests that the minor child's psychological complaints after the events now at issue were consistent with those reported earlier in her life. It further notes that she was able to graduate from high school, is enrolled in college, and testimony

indicated that, at least for a period of time, her relationship with her parents improved, among other things. Summarizing its argument, the School Board writes that: "The weight of the evidence from plaintiffs' own witnesses shows that her behavior has actually improved since Duhon's arrest and that there is no new or more significant problems from what she was already having before she met Duhon because of her very difficult childhood." Praying for a reduction in the $250,000 award, the School Board suggests that jurisprudence indicates that "$60,000 would be the highest award legally justified considering the evidence proving the probability damages caused to [the minor child] by Duhon."

Again, we find the School Board's argument faulty. The plaintiffs' expert clinical psychologist explained that the minor child's traumatic history "made her more vulnerable to attention of an older person." Rather than addressing that concept, the School Board seemingly suggests, both in its assignment of error regarding fault, and in this assignment of error, that the minor child's prior history somehow made her more culpable and less subject to harm. We reject any such contention.

This assignment of error is without merit.

**DECREE**

For the foregoing reasons, the Motion to Supplement Record filed by the Calcasieu Parish School Board is granted. The apportionment of fault contained within the judgment under review is reversed and fault is apportioned 50% to the Calcasieu Parish School Board and 50% to Lance Duhon. The judgment is further reversed to the extent it reduced general damages to the plaintiffs to the amount of $225,000.00 and is amended to reflect that judgment is now cast in favor of the plaintiffs and against Lance Duhon, Calcasieu Parish School Board, and Berkley

12

Insurance Company, in the principal amount of $250,000.00, plus legal interest thereon from date of judicial demand, until paid. As amended, the judgment is affirmed. Costs of this proceeding are assessed to Calcasieu Parish School Board and Berkley Insurance Company.

**MOTION TO SUPPLEMENT RECORD GRANTED. REVERSED IN PART; AMENDED IN PART; AND AFFIRMED AS AMENDED.**

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 15-647

**STEVEN GILLESPIE, ET AL.**

**VERSUS**

**CALCASIEU PARISH SCHOOL BOARD, ET AL.**

**COOKS, J., concurring.**

The jury expressly found the School Board's behavior in re-hiring Duhon and in failing to supervise him in the face of what it knew about his proclivities to harm students "reckless, outrageous, willful, flagrant or wanton." That means the School Board's behavior is about as bad as it gets. The facts concerning the School Board's outrageous conduct in this case present a compelling case for the imposition of punitive damages on it. The evidence in this case established that Duhon disclosed his prior investigation for sexual misconduct to Principal Reed. Reed contacted the principal at the prior school, Ms. Fraser, who confirmed Duhon was investigated for sexual misconduct and that she would not rehire him as the result of those incidents involving a fifteen-year-old female student. Principal Fraser even went the extra mile and called the Head of High Schools for the parish's school system, Dave Buller, who gave her the impression that Duhon would not be rehired at Sam Houston High. Nevertheless, not only did Principal Reed hire Duhon, his decision was approved by School Superintendent Savoy personally. Savoy admitted he was well acquainted with Duhon's uncle, and had previously been a coaching mate with Duhon's father in the Calcasieu school system. Additionally, Duhon intentionally falsified, under oath, the required

1

statement on the sexual misconduct disclosure form required by the School Board. Having previously investigated Duhon, the School Board knew the statement was false but re-hired Duhon anyway.[1] To make matters even more egregious, knowing all of this, the School Board did nothing to assure proper supervision of Duhon and allowed him to be alone, behind a shut door, with paper over the glass, in a classroom with minor female students—all in violation of state law. This allowed Duhon to engage in sexual misconduct with his victim right in the classroom for over two months on an almost daily basis. In my view this behavior by the School Board makes it a co-perpetrator with Duhon as that term is applied in criminal law—a principal by "aiding and abetting" him in the commission of the criminal act, an act that was foreseeable and substantially certain to occur.[2] Alas,

---

[1] As the majority finds, the School Board acknowledged it investigated Duhon's prior conduct in 2007 with a student at Barbe High School; acknowledged it was aware of the principal's decision not to re-hire Duhon at that school in 2008; and acknowledged it was aware that Principal Fraser communicated that decision to Principal Reed at Sam Houston High in 2012. Nevertheless, the School Board approved Duhon's hiring in 2012.

[2] I note that, although Plaintiffs amended their petition several times they did not specifically name as a defendant Superintendent Savoy or Dave Buller, head of high schools for the parish school system. A reasonable fact-finder may have found their conduct culpable as a co-perpetrator. Principals to a crime are defined in La.R.S. 14:24: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, *aid and abet in its commission*, or directly or indirectly counsel or procure another to commit the crime, are principals." (emphasis added) Just because La. C.C 2315.7 refers to "the perpetrator" it cannot be interpreted to mean, in this case, only Duhon. The criminal law defines principals and that definition cannot be ignored when interpreting the meaning of "perpetrator" in Article 2315.7 to determine who must pay punitive damages for their criminal behavior. If faced with the circumstance wherein the perpetrator who actually performs an act of molestation is aided by a co-perpetrator who physically restrains the victim for him there is no doubt that both are principals to the crime—co-perpetrators equally guilty and equally liable, individually, for punitive damages. In *State v. Kalathakis*, 89-1199 (La. 6/19/90), 563 So.2d 228, 231, the supreme court explained causation and foreseeability impacting the determination of a co-perpetrator's responsibility:

> A causal relation between the defendant's conduct and the harm for which the prosecutor seeks to impose criminal sanctions is an essential element of every crime. Causation is a question of fact which has to be considered in the light of the totality of circumstances surrounding the ultimate harm and its relation to the actor's conduct. M. Bassiouni, *Substantive Criminal Law,* §§ 5, 5.2 (1978). A defendant should not be held responsible for remote and indirect consequences which a reasonable person could not have foreseen as likely to have flowed from

2

however, the Plaintiffs in the trial court conceded the inapplicability of article 2315.7 and, as the majority concludes, its application is not before us. I therefore must concur with the majority ruling.

---

his conduct or from those consequences which would have occurred regardless of his conduct. *Id.*

In this case, the behavior of the School Board, and the two aforementioned individuals, in my view, constitutes at the very least aiding and abetting and makes them culpable as co-perpetrators with Duhon. The harm to this student was forseeable, even substantially certain to follow the hiring of Duhon. The molestation of this child was not a remote or indirect consequence of hiring Duhon and allowing him unfettered and unsupervised access to children in his classroom. Moreover, this could not have happened to this child if the School Board had acted properly instead of knowingly accepting a falsified application and hiring Duhon knowing what it knew about him.

The law also defines accessories after the fact as "any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment." Moreover, the law also expressly prohibits "sexual conduct between [an] educator and [a] student," La. R.S. 14:81.4, and provides in part (F) of that statute "Notwithstanding any claim of privileged communication, any educator *having cause to believe that prohibited sexual conduct between an educator and student* [has occurred] *shall* immediately report such conduct to a local or state law enforcement agency." (emphasis added) That statute even provides for "immunity from civil or criminal liability" for any person making such report. La.R.S. 14:81.4(G).

The School Board not only had a mandatory affirmative duty to report Duhon's prior behavior, but also had a duty to follow the rules prescribed by law for the protection of the children in its charge. The School Board intentionally breached that duty by hiring Duhon. This was compounded by failing to put any safeguards in place to monitor Duhon and protect the children they had knowingly put at risk.

3